ELIZABETH B. BIRD *vs.* CHARLES S. BIRD, JR.

Essex. March 10, 1987. — June 22, 1987.

Present: GRANT, KAPLAN, & KASS, JJ.

*Divorce and Separation,* Attorney's fees, Separation agreement. *Contract,*
Separation agreement. *Practice, Civil,* Offer of judgment. *Estoppel.*
*Jurisdiction,* Plaintiff's clean hands. *Attorney at Law,* Compensation,
Signing of pleadings and other court papers. *Words,* "Pleading."

Where a wife's action to enforce a marital separation agreement ended in
a settlement under which the husband was commited to paying all arrear-
ages plus interest and to making future payments pursuant to the original
agreement, albeit with a partial deferral of the husband's payments for
a five-year period, the relatively modest deferral did not, in the cir-
cumstances, make the husband the "successful party" entitled to benefit
from a provision of the agreement allocating to the successful party the
legal fees in any proceeding by either party to enforce the agreement.
[363-365]

In the circumstances of a dispute as to the amount of attorney's fees to be
recovered by the wife as the successful party in her action to enforce a
marital separation agreement, a major error by the wife's out-of-State
counsel resulting in an overstatement of the amount of their fee did not
give rise to any equitable defense on the husband's behalf, either on
estoppel or "clean hands" principles, where the husband, whose main
objective was delay, had not changed his position in reliance on the
overstatement and where the judge made no finding that the overstatement
was deliberate or intended to deceive. [365-367]

Discussion of an attorney's obligation under Mass.R.Civ.P. 11 (a), as
applicable to all pleadings, motions, and other court papers. [367-369]

In the context of a dispute as to the amount of attorney's fees to be recovered
by a wife as the successful party in an action to enforce a marital
separation agreement, the judge acted within his discretion in not impos-
ing sanctions on an attorney for the wife, who filed, on her behalf, an
offer of judgment setting forth a fee a portion of which had been inad-
vertently, though significantly, overstated by the wife's out-of-State
counsel, where the judge could properly find that the attorney's conduct
did not amount to bad faith, and where the judge was also entitled to
consider that the amount of legal fees actually requested was not inflated
by the inadvertent overstatement. [369]

In a dispute as to the amount of attorneys' fees to be recovered by a wife
under a provision of a marital separation agreement allocating legal fees

to the successful party in any action to enforce the agreement, a judge did not abuse his discretion in disallowing an amount allocable to the charges of her out-of-State counsel. [369-371]


CIVIL ACTION commenced in the Superior Court Department on September 13, 1982.

The case was heard by *Peter F. Brady*, J.

*Richard K. Donahue* for the plaintiff.

*Edward R. Lev* for the defendant.

KASS, J. Four days into the trial of an action on a marriage separation agreement, the parties settled their primary dispute.[1] What remains are controversies over whether Charles S. Bird, Jr., shall pay legal fees incurred by his former wife, Elizabeth, and, if so, how much those fees should be. Although a postlude to the main event, the fee dispute has itself generated a sizeable record and bitterness to spare on the part of counsel.

A judge of the Superior Court determined that Elizabeth, as the successful party, was entitled to reimbursement of $56,139.50 in legal fees and costs charged by Donahue & Donahue, of Lowell, and $21,000 of a larger sum billed by Prickett, Jones, Elliott, Kristol & Schnee, of Wilmington, Delaware. Judgment entered for $77,139.50 plus interest. There are cross-appeals: Elizabeth contends she is entitled to the full measure of the Prickett firm's fee; Charles argues that she is entitled to none of either fee.

1. *Who is the successful party?* Article 13 of the parties' separation agreement provides, "In the event of any action by either of the parties to enforce this Agreement, the unsuccessful party shall bear the reasonable counsel fees and court costs of the successful party . . . ." The action to enforce the separation agreement was initiated by Elizabeth after Charles had lapsed into substantial default of his obligations under the agreement.

---

[1] This is our second encounter with the case. The plaintiff secured a judgment favorable to her on a motion for summary judgment. On appeal, the judgment was reversed, see *Bird* v. *Bird,* 18 Mass. App. Ct. 1110 (1984), and the case was remanded for trial on the merits.

The settlement which disposed of the underlying action on the separation agreement committed Charles to pay all arrearages, plus ten percent interest, and to adhere to future payments required by the original agreement, albeit with deferrals of $35,000 per year (out of $125,000) for five years. The deferred amounts, plus interest, are to be paid in 1991. The naive observer might suppose that Elizabeth had achieved an excellent result. Charles, however, claims rollicking success. His objective, he said, was to stretch out payments to tide him over a lean (these things are relative) period and a stretch-out is what the litigation produced.

As matter of language, success means the prosperous achievement of something desired, planned or attempted. See Webster's 3d New Intl. Dictionary 2282 (1971); Oxford English Dictionary 3134 (Compact ed. 1971); American Heritage Dictionary 1214 (2d College ed. 1982). Charles did, as an outcome of the action brought by Elizabeth to enforce the separation agreement, achieve something he desired: delay. Wishing to defer his payments was not simply a matter of wilfulness or whim on Charles's part. Although a wealthy man, he had suffered a precipitous drop in dividend income — $300,000 per year to zero — from Bird & Co., a closely held corporation in which he was a major stockholder. Charles had reason to anticipate that his comparative adversity would be temporary.

We think, however, that it would subvert the stability of legal agreements if the relatively modest concessions secured by Charles could be counted a success. Indeed, Charles's argument that he was the successful party is a profoundly cynical one. It suggests that provoking litigation through nonperformance of a legal obligation is an acceptable tactic and that the provocateur who gains an advantage through its use may raise the banner of success. We are disinclined, thus, to reward nonperformance of agreeements.

There is also an insidious side to Charles's position. The allocation of legal costs to the prevailing party is not an unusual provision in marital separation agreements. Compromise of disputes arising out of such agreements would be much discour-

aged if yielding any ground of controversy also meant yielding the status of the prevailing or successful party.

In certain kinds of cases, achievements of less than ultimate goals, i.e., securing some benefit for the party bringing suit, may earn one status as a prevailing party for purposes of recovery of legal fees under 42 U.S.C. § 1988 (1982). See *Draper* v. *Town Clerk of Greenfield,* 384 Mass. 444, 453 (1981), cert. denied, 456 U.S. 947 (1982); *Crane* v. *Commissioner of Pub. Welfare,* 400 Mass. 46, 49-50 (1987); *Coalition for Basic Human Needs* v. *King,* 691 F.2d 597, 599-600 (1st Cir. 1982). See also *Virzi Subaru, Inc.* v. *Subaru, Inc.,* 742 F.2d 677, 680-681 (1st Cir. 1984), involving claims of rights under a Connecticut statute regulating retail franchises. Those cases, however, have a "private attorney general" ingredient which is absent from actions based on private contracts. An analogy with the former category of cases is not self-evident.[2]

During the fee dispute portion of the litigation and on appeal, Charles said that a stretch-out of his obligations is all he ever wanted. The tenor of his answer and counterclaim was otherwise. In his pleadings he claimed the agreement was unconscionable and sought reformation. By terms of the settlement agreement, the fairness of the agreement was inferentially conceded and its provisions were left in the main unchanged. On a comparative basis, Elizabeth was the more successful party.

2. *Consequences of overstatement of the Prickett firm's fees.* As trial of the primary dispute drew closer, the parties' settlement negotiations became more serious and on January 10, 1985, Elizabeth served on Charles an offer of judgment (see Mass.R.Civ.P. 68, 365 Mass. 835 [1974])[3]. That document

---

[2] *The Coalition for Basic Human Needs* and *Virzi Subaru* opinions express the reservation that the action producing a benefit for the plaintiff must not have been, in the first instance, frivolous, unreasonable, or groundless. The record in the case at bar was insufficiently developed to support a conclusion whether there was any merit in the defenses to the agreement asserted by Charles in his answer.

[3] Under the rule, a party defending against a claim may serve upon the adverse party an offer to take judgment in accordance with the terms of the

represented that Elizabeth had, as of January 1, 1895, incurred counsel fees and costs aggregating $118,475, and was prepared, in compromise, to accept reimbursement of $50,000 of that sum from Charles. After the main case had been settled and the parties had begun picking at the fee dispute, Mr. William Prickett discovered a bookkeeping error in his firm's charges. It was a whopper. The Prickett firm had overstated its charges as of January 1, 1985, by some $55,000. The considerable dimensions of the Prickett firm's mistake come into shaper focus when one considers that the Donahue firm's charges as of January 1, 1985, were $36,000.

Charles argues that the Prickett firm's overstatement was so grievous and, thereby, so obstructed settlement that Elizabeth is estopped from any recovery of counsel fees. Estoppel entails a representation which induces a course of conduct detrimental to the person who reasonably relied on the representation. *DeSisto's Case*, 351 Mass. 348, 352 (1966). *National Medical Care, Inc.* v. *Zigelbaum*, 18 Mass. App. Ct. 570, 580 (1984). Although the trial judge found that the overstatement of the Prickett firm's charges had delayed disposition of the primary case, there was no evidence that Charles, at that juncture, was prepared to settle at all. His strategy was one of delay. Implicitly, the judge concluded that Charles had not materially changed his position by reason of the overstated fee. Not the least persuasive reason for so concluding was that Elizabeth had never asked for reimbursement of $118,475 in legal fees, but had been prepared from the outset to accept $50,000. The aggregate of the correct Prickett and Donahue charges as of January 1, 1985, exceeded $50,000. Contrast *Cable Marine, Inc.* v. *M/V Trust Me II*, 632 F.2d 1344, 1345-1346 (5th Cir. 1980). We think the judge rightly rejected Charles's estoppel argument.

We are similarly unpersuaded, as was the trial judge, that Prickett's error saddled him with the onus of coming into equity

---

offer. As Charles had filed a counterclaim, Elizabeth was a "party defending against a claim" and could employ rule 68. See, generally, Smith & Zobel, Rules Practice § 68.1 (1981).

with unclean hands. Application of that doctrine rests in the broad discretion of the trial court. *Fales* v. *Glass,* 9 Mass. App. Ct. 570, 575 (1980). *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Mach. Co,.* 324 U.S. 806, 814-815 (1945). *Norton Co.* v. *Carborundum Co.,* 530 F.2d 435, 442 (1st Cir. 1976). The trial judge acted well within the scope of that discretion. There was no finding that the overstatement was intentional or intended to deceive. The judge was in the best position to review and judge the conduct of the parties. Absent fraud or perjury, denying Elizabeth counsel fees would serve but lightly the cause of the integrity of the courts and would tend to defeat the policy of imposing upon debtor spouses the cost of the legal chase. See *Walsh* v. *Atlantic Research Associates, Inc.,* 321 Mass. 57, 66 (1947); *Olmstead* v. *Murphy,* 21 Mass. App. Ct. 664, 666 (1986). As will appear later in this opinion, the judge did draw some inferences adverse to Prickett from his firm's confusion. Finally, the platform of Mr. Lev, who is Charles's counsel, to invoke a clean hands argument is shaky. His conduct of the litigation was a study in maneuver, delay, and obstructive defense. He was a major contributor to giving this case its nasty quality. Appeals to equity earn him the sanctimony award.

Further upon the business of the overstatement of fees which appeared in the offer of judgment, Charles urges that Mr. Prickett and Mr. Donahue, in filing their offer of judgment, transgressed Mass.R.Civ.P. 11(a), 365 Mass. 753 (1974). Elizabeth, by way of reaction, ascribes rule 11(a) violations to Charles's answer. The rule provides that the "signature of an attorney to a pleading constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is a good ground to support it; and that it is not interposed for delay." A "pleading" comprehends the complaint, answer, and reply which frame the issue, *Kolakowski* v. *Finney,* 393 Mass. 336, 340 (1984), and, therefore, an offer of judgment is not a "pleading." Under Mass.R.Civ.P. 7(b) (2), 365 Mass. 749 (1974), however, rules applicable to signing of pleadings apply to all motions and other papers. See 5 Wright & Miller, Federal Practice and Pro-

cedure §§ 1191, 1332 and nn.7 and 8 (1969).[4] Thus, the lawyer who signs a motion or offer of judgment has the same obligation as the signer of a complaint to take care that there is support for the facts and contentions of law put forward. Cf. *Irving Levitt Co.* v. *Sudbury Management Associates, Inc.,* 19 Mass. App. Ct. 12, 18-19 (1984).

As to the amount of the legal charges in the offer of judgment, it is dispositive that the judge concluded that Mr. Donahue, though surprised by the Prickett bill, was not "at fault in any way in not investigating the Prickett bill." That finding cannot be said to be clearly erroneous, although it may perhaps be unduly forgiving.

Mr. Prickett, who passed on the bill for his firm, was removed from the day to day action in the Bird case. He is an experienced lawyer, and he ought to have wondered why the time charges were so high — the case was not complex — but the anomaly, in the hurly-burly, could have escaped his attention. It was not Mr. Prickett's finest hour, but the trial judge could conclude that Mr. Prickett's failure did not require invocation of sanctions. Mr. Donahue may have felt some diffidence about questioning the charges of the law firm which had hired him. To understand what may have happened is not to condone it. Mr. Donahue may not have had a duty to audit the Prickett charges, but the circumstances called for inquiry on Mr. Donahue's part. The Prickett charges were more than double the Donahue firm's and, as called to attention later in this opinion, the Donahue firm had done the greater share of the work. Rule 11(a) requires "good ground" to support a pleading. That criterion has been thought to require reasonable inquiry and an absence of bad faith. See *Nemeroff* v. *Abelson,* 620 F.2d 339, 350 (2d Cir. 1980); *Kinee* v. *Abraham Lincoln Fed.*

---

[4] At the time the Massachusetts Rules of Civil Procedure were adopted, 1974, the text of rule 7(b), so far as here material, was the same as its Federal analog. In 1983, the Federal rule was amended by the addition of a subsection (3) explicitly requiring all motions to be signed in accordance with rule 11. The reference to "signing" in subparagraph (2) was dropped. Federal rule 11 was also amended in 1983. It now extends by its own terms to "every pleading, motion, and other paper" and elaborates on what a lawyer certifies to by signing a pleading, motion, or other paper.

*Sav. & Loan Assn.,* 365 F. Supp. 975, 982-983 (E.D. Pa. 1973); *Helfant* v. *Louisiana & So. Life Ins. Co.,* 82 F.R.D. 53, 56-57 (E.D.N.Y. 1979); Advisory Committee Note on amendment of Federal rule 11, 97 F.R.D. 198-201 (1983); Risinger, Honesty in Pleading and Its Enforcement: Some "Striking" Problems with Federal Rule of Civil Procedure 11, 61 Minn.L.Rev. 1 (1976). This was on the margin on the criterion of reasonable inquiry. Mr. Donahue had received the Prickett charges from a lawyer of good reputation; yet Mr. Donahue, himself, found those charges surprising. He, too, perhaps, did not experience his finest hour. For all that, the judge, within his discretion and applying his sense of the entire case, could decide that this failure, too, did not represent bad faith misuse of a court paper which would bring down sanctions. See *Nemeroff* v. *Abelson,* 620 F.2d at 350. In so deciding, the judge could consider that the offer of judgment never asked for payment of the inadvertently inflated amount. The amount of legal fees asked for, $50,000, was not inflated by the error. Moreover, the matter of the legal charges was by no means the dominant factor in the offer of judgment. The dominant factors related to performance of the separation agreement.

Concerning Charles's answer and counterclaim, there was evidence that they were filed for strategic purposes. That does not, however, make them false, and our unpublished memorandum in *Bird* v. *Bird,* 18 Mass. App. Ct. 1110 (1984),[5] stands for the proposition that Charles's pleadings had facial plausibility. Cf. *Coolidge Bank & Trust Co.* v. *First Ipswich Co.,* 9 Mass. App. Ct. 369, 371 (1980); *Hedison Mfg. Co.* v. *National Labor Relations Bd.,* 643 F.2d 32, 35 (1st Cir. 1981).

3. *The amount of the fees.* It will be recalled that the judge accepted as fair and reasonable the Donahue charges of $56,139.50 (as of May 29, 1985) and cut the Prickett firm charges from $52,771.77 to $21,000. On behalf of the Donahue firm, the court had time and costs records of great precision. Indeed, that firm's charges are not challenged as to reasonableness. Elizabeth appeals from the disallowance of the total amount requested on account of the Prickett fee.

[5] The case was disposed of summarily under rule 1:28 of this court.

How to assess the reasonableness of fees has been amply discussed in the books of late. What factors dominate and with what degree of conservatism a court approaches the problem will vary with the context. Is the obligation that of a client to his own, freely chosen lawyer? Is the obligation that of a party in a domestic relations case to the lawyer for the opposite spouse? Is the obligation to a lawyer for the opposite side who operates as a private attorney general? Is the obligation one that arises out of a contract, as here? For a sampling of recent cases which illustrate a variety of these contexts and which, collectively, constitute a compendium of the factors to be considered, see: *Stratos* v. *Department of Pub. Welfare,* 387 Mass. 312, 321-324 (1982) (vindication of rights under public law); *Mulhern* v. *Roach,* 398 Mass. 18, 24-30 (1986) (client's own lawyer); *Crane* v. *Commissioner of Pub. Welfare,* 400 Mass. at 50 (vindication of rights under public law); *Salem Realty Co.* v. *Matera,* 10 Mass. App. Ct. 571, 576-577 (1980), *S.C.,* 384 Mass. 803 (1981) (client's own lawyer); *Robbins* v. *Robbins,* 19 Mass. App. Ct. 538, 540-544 (1985) (divorce); *Olmstead* v. *Murphy,* 21 Mass. App. Ct. at 665 (enforcement of judicial order); *Kennedy* v. *Kennedy,* 23 Mass. App. Ct. 176, 179-181 & n.3, (1986), *S.C.,* 400 Mass. 272 (1987) (enforcement of judicial order); *Grendel's Den, Inc.* v. *Larkin,* 749 F.2d 945, 950-957 (1st Cir. 1984) (vindication of rights under public law — describes "lodestar" approach of Federal courts, an approach which has had, at best, mixed reviews in the Massachusetts decisions, see *Draper* v. *Town Clerk of Greenfield,* 384 Mass. 444, 456-457 [1981], and the *Stratos* v. *Mulhern* cases cited above).

In his memorandum of decision, the trial judge writes that he had the criteria enumerated in the *Stratos* case in mind in arriving at his conclusions about counsel fees. One wishes for more analysis. We are able, however, to make out an outline of what would be a supportable evaluation of the Prickett firm's services. First, the $55,000 error induced skepticism about the reliability of the Prickett firm's backup materials for its adjusted charges. The judge said as much. Second, the judge found the Prickett bills "not as clear and well documented as [the bill]

of the Donahue firm." Third, the Donahue charge, as we have said, was not debated. That firm pulled the laboring oar in the litigation. The site of the case was in Massachusetts. Charles, the defendant, resided in Manchester. Discovery was conducted by the Donahue firm. Trial was had in the Commonwealth. To be sure, there were client relations and guidance work to be done by the Prickett office, analyses of Elizabeth's financial position, tax calculations, and so forth. Nonetheless, the judge could rationally find that if $56,139.50 was correct for the principal actors in the cause, some lesser figure must be fair and reasonable for the services of the referring office.

The cases previously cited all touch on the element of discretion reposed in a judge who fixes reasonable legal costs. While we regret the absence of explication, we do not think the judge so far off as to conclude either that he abused his discretion or that the interests of justice require a remand for reconsideration and further explanation of the Prickett fee. Contrast *Kennedy* v. *Kennedy,* 400 Mass. at 274-275. This litigation has already been excessively contentious, long, and bitter. The record reflects that counsel have become personally embroiled in the fray. It makes for entertaining reading but such combat ought not to be prolonged.

As there are cross-appeals and we affirm the judgment, neither party is to have counsel fees or costs incident to the appeal. Compare *Stratos* v. *Department of Pub. Welfare,* 387 Mass. at 325.

*Judgment affirmed.*