NEW ENGLAND ALLBANK FOR SAVINGS *vs.* ALAN P.
ROULEAU & another.[1]

No. 88-P-705.

Worcester. April 19, 1989. - December 6, 1989.

Present: ARMSTRONG, PERRETTA, & SMITH, JJ.

*Practice, Civil*, Default, Relief from judgment, Judicial discretion. *Attorney at Law*, Signing of pleadings and other court papers. *Rules of Civil Procedure. Negotiable Instruments*, Assignment. *Assignment*.

The judge in a civil action properly exercised his discretion in denying defendants' motions seeking relief from a default judgment against them, where the defendants' argument that their pleadings were not timely filed because of their counsel's obligations under Mass.R.Civ.P. 11 (a), was unsupported by the law and facts [140-142], and where the defendants made no showing that the defenses and counterclaims sought to be asserted had merit [142-143]; the plaintiff's failure to claim that a grant of relief would cause it specific, irremediable prejudice did not require a different result [144].

In an action commenced by a bank to recover money due and payable under certain promissory notes executed by a defendant individually or with others, the judge did not err in concluding that, based upon the language of the assignment of one of the notes to the bank, and the intent of the parties (as the judge found it to be) in executing it, the assignment of the note was not a full discharge of the defendant's indebtedness on his unpaid notes. [145-146]

CIVIL ACTION commenced in the Superior Court Department on February 14, 1986.

A default judgment was ordered by *William H. Welch*, J., and motions for relief from judgment, reconsideration, and an assessment of damages were heard by him.

---

[1]Wachusett Associates, Inc. There is a third defendant, Papillon Enterprises, Inc. (Papillon). However, the proceedings against Papillon were automatically stayed under 11 U.S.C. § 362 (1982), when it filed a petition for bankruptcy about a month after this action was brought. Rouleau owned sixty percent of Papillon's stock and had an interest in Wachusett.

*James J. Marcellino* for the defendants.

*William R. Grimm* for the plaintiff.

PERRETTA, J. This suit was commenced in the Superior Court in 1986 by New England Allbank for Savings (Allbank) to recover monies due and payable under eight promissory notes executed by Rouleau individually or jointly with Wachusett or Papillon or both. The defendants were defaulted when they failed to acknowledge the complaint. About a year after entry of the default and pursuant to an order of the court, Allbank filed a motion for an assessment of damages and entry of a default judgment. The defendants then retained counsel who was granted numerous enlargements of time in which to present cause against entry of a judgment. When the judge denied a further request for time and allowed Allbank's motion, the defendants filed a motion for relief from judgment, a motion for reconsideration, and their answer, which included counterclaims. The judge denied their motions and assessed damages. On appeal from the ensuing judgment, the defendants argue that they were unable to respond earlier to Allbank's motion because of their attorney's ethical obligation under Mass.R.Civ.P. 11(a), 365 Mass. 753 (1974), to investigate the facts and the law before pleading. They also claim that the judge erred in ruling that their assignment of a note to Allbank was not a full discharge of their indebtedness. Concluding that counsel was not required under rule 11(a) to conduct an extensive investigation of the facts to be pleaded and that the assignment of the note to Allbank was not intended to operate as a discharge of the defendants' obligations, we affirm the judgment.

1. *History of the Case.*

Allbank brought this action on February 14, 1986, to recover monies owed on eight promissory notes executed in 1985. Attachments and injunctions were issued without word from the defendants, and in April, 1986, pursuant to Allbank's application, a default was entered against them. Allbank then did nothing until the court, on March 24, 1987, ordered that the matter was to be dismissed unless

within sixty days Allbank filed for an assessment of damages and a default judgment. Allbank reacted on May 12 by filing an appropriate motion accompanied by an affidavit detailing its damages as of that date.

A week later, the defendants, acting on their own, obtained a continuance of any hearing on Allbank's motion until June 15, in order that they might seek counsel. Counsel for the defendants entered an appearance on June 10 and filed a simple statement in opposition to Allbank's motion. He also requested until July 3 "to file such other papers as may be appropriate." Grounds for the request were set out in an affidavit signed by counsel. In the affidavit counsel explained that, before he was "formally retained" by the defendants, he had been able to meet with Rouleau for only five hours. Based upon his client's narration of the events, counsel had reached tentative and preliminary conclusions that defenses and counterclaims "may well" exist. Further time was needed, however, because counsel, "mindful of the requirements of Rule 11," had not yet satisfied himself that the pleadings he intended to file would be "well-grounded and not interposed for delay."

Twenty-six days later, counsel sought until July 17 to oppose the motion. Counsel's affidavit recited that "further investigation" was necessary due to the "grave nature" of what the investigation had thus far revealed: "serious wrongful, and possibly illegal, activities" by Allbank in connection with its loans to the defendants. Counsel required the additional time so that he could continue to interview nonparties to the case who had "knowledge of the plaintiff's wrongful conduct."

This deadline of July 17 was again extended, on July 13, to July 20, at which time counsel was expected by the judge "to provide affirmative proof . . . why judgment should not enter." Counsel did not provide any "proof" on July 20. Instead, he presented a motion to set aside the default of April 19, 1986, on the stated grounds that: (1) because of Papillon's bankruptcy proceedings (see note 1, *supra*), "nearly all of the Bank's loans to the Defendants have been,

or are in the process of being, paid back"; (2) Allbank would not be prejudiced "by allowing this action to proceed"; and (3) the defendants were "entitled to their day in court." An additional thirty-day period in which to answer was requested. According to counsel's affidavit, although in excess of fifty hours had been spent interviewing five "third-party witnesses," reviewing documents, and preparing a chronology of events for the drafting of an answer and counterclaims, thirty days more were needed to complete the investigation being conducted "pursuant to Rule 11."

As best we can glean from the docket entries and papers provided us in the record appendix, counsel apparently presumed further indulgence. When he advised the clerk on July 30 that he would be filing an answer the next day, he was surprised to learn that his motions of July 20 (to remove the default and to enlarge the time in which to file an answer) had been denied and Allbank's motion for an assessment of damages and entry of a default judgment had been allowed on July 24. The docket reflects that notice of these orders was mailed on July 27, along with the judge's memorandum of decision.[2]

Detailing the history of the case in his memorandum, the judge noted that, in the some forty days since counsel had filed his appearance, no answer to the sixteen month old complaint had been presented, notwithstanding the time limitation of twenty days set by Mass.R.Civ.P. 12(a), 365 Mass. 754 (1974). As put by the judge, the "best defendants can offer" are "*tentative*[]" conclusions that there "*may*" be meritorious counterclaims of what "*seems*" to be wrongful and "*possibly*" illegal conduct by Allbank. (emphasis in original). Although the judge recognized that the amount claimed by Allbank to be owed was substantial, $200,000, he noted that the defendants had presented nothing to show coercion or unfairness by Allbank in connection with the promissory notes which were "straightforward." Further, no dispute concerning the amount or validity of these notes had

[2]July 24, 1987, was a Friday.

been presented.[3] The judge concluded that the case did not appear to raise any issues of public concern and that, although Allbank had not "specifically asserted any prejudice, justice delayed is justice denied. . . ."

A thirty-nine page answer, including affirmative defenses, counterclaims, and a jury trial demand, was filed on July 31. There followed, on August 3, a motion for relief from judgment under Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), and a motion for reconsideration of the orders of July 24. In August and September, the defendants also filed affidavits, apparently in support of the allegations set out in their answer and counterclaims.[4]

The gist of these defenses and counterclaims (and we characterize rather than synopsize) is economic coercion and retaliation, credit disparagement, overcharges through illegal and undisclosed "points," bad faith, and unfairness by Allbank against Rouleau, largely in respect to Papillon.

In his memorandum of decision of October 29, 1987, the judge set out his reasons for denying reconsideration of his earlier rulings. The most pertinent of those reasons are: (1) that Rouleau "certainly was aware of the facts" alleged in his answer and counterclaims prior to June 10, 1987 (when counsel entered an appearance), and July 20, 1987, the "deadline for responding" to Allbank's complaint; (2) that many of the allegations pleaded "involve or concern" Papillon, and any judgment against Rouleau and Wachusett

---

[3]Although the amount of the notes had not been contested, the judge found that there was error in Allbank's calculation of the amount of the damages claimed.

[4]The affidavits are curious. On August 13, 1987, counsel for the defendants sought leave to file an unsigned affidavit from a nonparty who was unavailable due to vacation plans but who had authorized his affidavit to be filed unsigned, with a signed affidavit to be filed upon his return. The signed affidavit was filed on October 2, 1987. However, according to the certification of the notary public, the affiant subscribed and swore to his signature on July 19, 1987. Another affidavit, signed on August 12 and filed two days later, has no direct relevance to the case. Its purpose appears to be to show that Allbank's unfair act as set out in the defendants' counterclaim under G. L. c. 93A, § 11, was also committed on the affiant who has no relation with or interest in this action.

"would not bar action which the trustee [in bankruptcy] might take for Papillon"; and (3) the defendants had never advanced a good reason why they could not have responded by July 20 or why the orders of July 24 should be reconsidered. In denying the motion for reconsideration, the judge expressly stated that he was doing so as an exercise of his discretion.

2. *The Default Judgment.*

"A defendant, trying to set aside a default or default judgment (whether under Rule 55[c] or Rule 60[b]) must, in any event, accompany his motion with an affidavit setting forth the facts and circumstances (including the nature of his defense on the merits) upon which he rests his motion." Smith & Zobel, Massachusetts Rules Practice § 55.8 (1977). We have recited the history of these proceedings in some detail because we think it apparent from the facts that the defendants failed to make this requisite showing.

Three reasons for relief were advanced on the motions and are pressed on appeal: (1) pleadings could not be earlier filed because of counsel's obligations under rule 11(a); (2) there is merit to the defenses and counterclaims belatedly asserted; and (3) Allbank will suffer no prejudice from the delay if the defendants are allowed to proceed.

a. *Rule 11(a).* It is the defendants' position that they were "sanctioned" for counsel's "commendable conduct" in remaining faithful to the certification requirement of rule 11(a). The argument is unsupported by the law and the facts and is untenable at best.

That portion of rule 11(a) which is here pertinent reads: "The signature of an attorney to a pleading constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is a good ground to support it; and that it is not interposed for delay." 365 Mass. 753 (1974). We have found no authority, and the defendants have directed us to none, for the proposition that rule 11(a) comprehends a duty to investigate to the extent and degree here undertaken. The rule "imposes an obligation on attorneys in this Commonwealth to ensure that sham

pleadings are not employed," *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 557 n.6 (1976), and that pleadings be based upon a "reasonable inquiry and an absence of bad faith." *Bird* v. *Bird*, 24 Mass. App. Ct. 362, 368 (1987). Although the motion in issue in *Bird* was viewed as marginal, it was concluded that counsel had not acted in bad faith even though he made no inquiry about asserted facts in the face of his reaction (one of "surpris[e]") to them. *Id.* at 369.

Looking to the construction given the substantially similar pre-1983 Federal analog, see *Rollins Environmental Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 179-180 (1975), we see that our rule embodies a less stringent standard, bad faith, than that imposed under Federal Rule 11, as amended in 1983.[5] See and compare *Nemeroff* v. *Abelson*, 620 F.2d 339, 350 (2d Cir. 1980) ("The standard under Rule 11 . . . is bad faith"), with *Golden Eagle Distrib. Corp.* v. *Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986) ("The new Rule was designed to create an affirmative duty of investigation both as to law and as to fact before motions are filed"). See also Advisory Committee Note, Federal Rule 11, 97 F.R.D. 165, 198-199 (1983) ("The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances. See *Kinee* v. *Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F. Supp. 975 [E.D. Pa. 1973]. This standard is

[5] By the 1983 amendment to Federal Rule 11, the sentence tracked by our rule 11(a) was rewritten to provide: "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." 97 F.R.D. 167 (1983). As amended, the Federal rule also allows for the imposition of sanctions, which can include a reasonable attorney's fee. There are marked similarities between Federal Rule 11 and G. L. c. 231, § 6F, which has been in place since 1976. See *Hahn* v. *Planning Bd. of Stoughton*, 403 Mass. 332, 338 (1988).

more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation. See *Nemeroff* v. *Abelson*, . . . [*supra*]").

Whatever the scope of the ethical obligations imposed under the rule, State or Federal, it should be obvious that those obligations do not create an entitlement to enlargements upon request.[6] At the time that the judge denied the defendants' request for a further enlargement, he had been provided with no reason as to why he should do otherwise or why he should not doubt whether another enlargement would produce an answer. Further, and as noted by the judge, the answer and counterclaims, once filed, contained nothing that could not have been asserted earlier. On the law and the facts here presented, counsel's concerns regarding his ethical obligations did not excuse the failure to comply with the July 20 deadline set by the judge.

b. *Meritorious defenses and counterclaims.* No showing was made on the motion purportedly brought under Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974),[7] that the defenses and counterclaims to be asserted had merit other than a simple assertion that the answer, counterclaims, and affidavit of Rouleau, attesting to the truth of the allegations, "show that the defendants have meritorious defenses and counterclaims." In short, the judge was told that the merits of the allegations recited in the thirty-nine page pleading

---

[6]We note that, in determining whether an appropriate prefiling inquiry has been made under Federal Rule 11, courts take into consideration the amount of time available to counsel to investigate the facts and the law and the extent to which counsel had to rely upon the clients to ascertain the facts. See, e.g., *Donaldson* v. *Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987); *Brown* v. *Federation of State Med. Bds.*, 830 F.2d 1429, 1435 (7th Cir. 1987); *Thomas* v. *Capital Sec. Serv., Inc.*, 836 F.2d 866, 875-876 (5th Cir. 1988). See also *Oliveri* v. *Thompson*, 803 F.2d 1265 (2d Cir. 1986).

[7]See *Old Colony Bank & Trust Co.* v. *Tacey Transp. Corp.*, 10 Mass. App. Ct. 825, 826 (1980) ("The motion . . . did not lie under Mass.R.Civ.P. 60(b) for the reason [if no other] that there had been no 'final judgment, order or proceeding' within the meaning of that rule. The motion amounted to nothing more than a request for reconsideration of the earlier order denying the motion for leave to file answers and counterclaims late").

were self-evident. The defendants become somewhat more focused in their motion for reconsideration. Here they point to the fact that Allbank had demanded that Rouleau pay "extra points" to an outside consultant in order that the loan be approved and that this "wrongful conduct" was committed against another, resulting in the "destruction" of that debtor's business, all as described by that person in an attached affidavit (see note 4, *supra*).

In denying the defendants' motions, the judge wrote (as previously recited), that "[m]any of the allegations appear to involve or concern Papillon" and could be considered by the trustee in bankruptcy notwithstanding any judgment against Rouleau and Wachusett. As for the extra points, the judge concluded that the defendants could raise "any issues of payment or other credits at the hearing to assess damages." On appeal, the defendants repeat that they have raised serious questions deserving of resolution by trial. However, they make no argument or otherwise address the judge's observations concerning the claims sought to be asserted.[8]

---

[8]As developed in the counterclaim, Allbank's president "regularly required" that "larger loans" be reviewed for approval by his "long-time close friend and business associate," who, as an independent consultant, was paid a fee of from one to three "points." In their brief, the defendants specify, for the first time, that the basis of their claim that the charge is illegal is G. L. c. 168, § 23, as inserted by St. 1982, c. 155, § 29. Without argument (and none was made) concerning the statute, we do not think the claim of illegality has self-evident merit. We quote the pertinent paragraph of the statute quoted by the defendants in their brief, underscoring, however, that portion omitted with ellipses by them: "Such corporation shall not negotiate, take or receive a fee, brokerage, commission, gift or other consideration, for or on account of a loan made by or on behalf of such corporation, other than appears on the face of the note or contract by which such loan purports to be or is made; *but this section shall not prohibit a reasonable charge for services in the examination of property and titles and for the preparation and recording of conveyances and other instruments pertaining to its loans, nor charges by such corporation for any services which by law it is authorized to render, nor premiums or charges in connection with its construction loans or the sale or purchase, or commitments therefor, of real estate mortgages for its own account.*" It is our understanding of the complaint and the affidavit of the former employee of Allbank that the independent consultant would be appraising property for the purpose, among others, of blanket mortgages to

c. *Absence of prejudice to Allbank.* Pointing to Allbank's attachments of their property, the substantial repayment to Allbank, and Allbank's own failure to prosecute diligently, the defendants state that Allbank will not be harmed by any grant of relief to them. Allbank has never rebutted this argument by claiming or identifying some specific, irremediable prejudice.

We do not think, however, that an absence of particularized prejudice to Allbank requires that the circumstances under which the default judgment was entered must be disregarded or given no weight. The judge could and did weigh the defendants' complete failure to offer some explanation for their sixteen month period of inaction,[9] counsel's unreasonable construction and invocation of rule 11(a) in the face of a final fair warning after numerous enlargements, the ability to raise most of the counterclaims in the bankruptcy proceedings and at the hearing on an assessment of damages, and the "considerable time" which he (the judge) "devoted" to the matter before bringing it to an end.

"Entry or, conversely, removal of default judgments has to do with the management of the case and, as such, is committed to the sound discretion of the trial judge. *Riley* v. *Davison Constr. Co.*, 381 Mass. 432, 441 (1980). *Bucchiere* v. *New England Tel. & Tel. Co.*, 396 Mass. 639, 641 (1986). *Jerry Martin Co.* v. *Hyannis Marina, Inc.*, 3 Mass. App. Ct. 746 (1975). We do not consider that discretion abused unless its exercise has been characterized by arbitrary determination, capricious disposition, whimsical thinking, or idiosyncratic choice. *Davis* v. *Boston Elev. Ry.*, 235 Mass. 482, 496 (1920). *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 433 (1979)." *Greenleaf* v. *Massachusetts Bay Transp. Authy.*, 22 Mass. App. Ct. 426, 429 (1986). Not one of these flaws can be found in the judge's rulings.

---

secure the loan being sought. The defendants and the affiant viewed the blanket mortgages as excessive, oppressive, and unnecessary.

[9] We do not regard counsel's statement that, "apparently" because of the bankruptcy proceedings and Allbank's inaction, the defendants themselves did nothing, as an explanation. See *Old Colony Bank & Trust Co.* v. *Tacey Transp. Corp.*, 10 Mass. App. Ct. 825, 826 (1980).

### 3. *The Assessed Damages.*

Three of the defendants' eight promissory notes had been paid in full at the time of the hearing to assess damages. Based upon the following facts, Rouleau claims that nothing more is owed Allbank. One of the loans was in the amount of $1,200,000, and involved the purchase of a health and raquetball club. The loan was secured by a mortgage on the real estate and a security agreement on the personal property. Nonpayment resulted in a scheduled foreclosure sale. However, Rouleau was able to find buyers who agreed to a purchase price of $1,500,000. Rouleau was to receive a commission in the amount of $115,000 at the closing. Various adjustments resulted in the buyers paying Rouleau $15,000 in cash and executing a promissory note in the amount of $100,000, payable in 180 days.

Because there was not going to be enough cash from the sale to discharge the debt to Allbank, the transfer could not be completed unless Allbank released its mortgage and security agreement. Allbank agreed to give the needed releases but insisted that Rouleau give to it his note from the buyers. After reviewing the necessary paper work with his then counsel, Rouleau signed and delivered the assignment of the buyers' note to Allbank.

By the pertinent terms of that assignment, Rouleau did "sell[], assign[], and transfer[]" to Allbank the buyers' promissory note. Allbank has never received payment on the note, the buyers claiming that Rouleau was in breach of certain obligations of their sale agreement with him. Rouleau argues that he owes Allbank nothing, because the language of his assignment unequivocally indicates that he and Allbank intended the assignment as a full discharge of his indebtedness on any and all remaining unpaid notes. Allbank claims that the assigned note was taken as a different form of collateral in order to permit the sale to the buyers to take place.

There is nothing in the terms of the assignment itself to support Rouleau's position. As put by the judge in his findings on the evidence presented at the hearing to assess dam-

ages, the "assignment drafted by . . . [Rouleau's] attorney was a simple assignment . . . [which] could have but did not contain any language as to any discharge or satisfaction of the remaining indebtedness." Based upon the language of the assignment and the intent of the parties (as he found it to be) in executing it, the judge concluded that the assignment of the buyers' note was not a full discharge of Rouleau's indebtedness on his unpaid notes. We see no error. See *Tudor Press, Inc.* v. *University Distrib. Co.*, 292 Mass. 339, 340-341 (1935); *Lipson* v. *Adelson*, 17 Mass. App. Ct. 90, 92 (1983). Compare *Berardini* v. *Hart*, 682 P.2d 519, 520 (Colo. Ct. App. 1984), where the parties expressly agreed that the assignment was a "full and complete discharge" of a debt.

*Judgment affirmed.*