Van Christo Advertising, Inc. *vs.* M/A-COM/LCS &
others.[1]

Suffolk. November 3, 1997. - January 12, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Rules of Civil Procedure. Attorney at Law,* Signing of pleadings and other
court papers, Assessment of costs. *Practice, Civil,* Judicial discretion, At-
torney's fees, Costs.

Discussion of the construction given to the pre-1983 version of Fed. R. Civ. P.
11, as that is applicable to the construction of the identical text of Mass. R.
Civ. P. 11. [413-416]
This court concluded that Mass. R. Civ. P. 11(a) authorizes a judge to impose
attorney's fees and costs where an attorney fails to show a subjective good
faith belief that a pleading was supported in both fact and law. [416-417]
A Superior Court judge erred in employing an objective standard, as embodied
in the amended Fed. R. Civ. P. 11, which requires that an attorney make a
prefiling inquiry as to the factual and legal basis of a pleading the attorney
has signed, rather than the subjective standard embodied in Mass. R. Civ.
P. 11, which requires that an attorney have a good faith belief that a plead-
ing is supported in both fact and law. [417]
This court concluded that, on the record presented, an attorney's sworn state-
ments, submitted in opposition to a motion for sanctions pursuant to Mass.
R. Civ. P. 11(a), demonstrated adequate diligence and her good faith belief
that her client's claims against another were legally viable; consequently,
attorney's fees and costs should not have been assessed against that at-
torney. [417-419]
On the record of a civil action, this court concluded that an attorney did not
wilfully violate Mass. R. Civ. P. 11(a) and that sanctions were improperly
assessed against him. [419-422]
Discussion of the 1983 amendments to the sanctions provision of Fed. R. Civ.
P. 11. [422-423]

Civil action commenced in the Superior Court Department on
July 24, 1992.

The case was heard by *Julian T. Houston,* J., and a motion to

[1] Light Control Systems, Inc. (LCS), predecessor in interest to M/A-COM/
LCS; Amelia Bissett; and Dean Ricciardi.

impose sanctions for violation of Mass. R. Civ. P. 11 (a) was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard L. Neumeier* for LisaAyn Padilla.

*John N. Greenwood,* pro se.

*Susan Grandis Brander* for Dean Ricciardi.

GREANEY, J. Attorneys LisaAyn Padilla and John N. Greenwood appeal from an order of the Superior Court awarding the defendant, Dean Ricciardi, attorney's fees and costs as a sanction for their violation of Mass. R. Civ. P. 11 (a), 365 Mass. 753 (1974). We transferred the appeal to this court on our own motion.

On July 24, 1992, Padilla filed an action for damages in the Superior Court on behalf of the plaintiff, Van Christo Advertising, Inc. (VCA), in which VCA alleged that Ricciardi had participated in the misappropriation of its contract (an agreement concerning advertising and public relations services) with Light Control Systems, Inc. (LCS).[2] In 1994, judgment entered on stipulations of dismissal, with prejudice, as to the other named defendants, LCS, M/A-COM/LCS, and VCA's former employee, Amelia Bissett. On March 17, 1995, summary judgment entered in favor of Ricciardi on the basis that, under G. L. c. 260, § 2A, the remaining claims asserted in VCA's complaint were time-barred. VCA was ordered to pay Ricciardi's attorney's fees and costs pursuant to G. L. c. 231, § 6F.[3] Counsel for Ricciardi then moved to impose sanctions against Padilla, and successor counsel, Greenwood, for violating rule 11 (a). A judge in the Superior Court allowed Ricciardi's motion and ordered that Padilla and Greenwood be held jointly and severally liable with VCA to pay Ricciardi's attorney's fees and costs.[4]

---

[2] The complaint asserted five claims against Ricciardi, including breach of contract, breach of fiduciary duty, tortious interference with the contractual relationship between Van Christo Advertising, Inc. (VCA), and LCS, fraud on VCA, and wrongfully causing loss of profits. The fraud and breach of contract claims were dismissed.

[3] In December, 1993, VCA made an assignment for the benefit of creditors, and is no longer an operating business entity.

[4] The judge denied that part of Ricciardi's motion which sought to impose sanctions under Mass. R. Civ. P. 11 (a), 365 Mass. 753 (1974), against another attorney, Brian M. Olmstead, who assisted Greenwood by conducting deposi-

On appeal, Padilla and Greenwood argue that the judge erred in employing an objective standard in evaluating their conduct and in imposing sanctions that are not authorized by rule 11 (a). We conclude that, while monetary sanctions are allowed under our rule, the judge erred in utilizing an objective standard to review the attorneys' conduct. Because we conclude that neither Padilla nor Greenwood engaged in a "wilful violation" of the rule, we vacate the order imposing sanctions against them.

1. The record on appeal is fragmented and requires considerable reconstruction. Based on our review of the record, we glean the following relevant facts.

a. *Ricciardi's employment with VCA.* In January, 1988, Ricciardi was hired by VCA as an independent contractor to provide temporary administrative assistance to the president, treasurer, and sole shareholder of the company, Van Christo. In this position, he maintained the files related to the LCS account, although other employees had access to those files. VCA terminated Ricciardi's employment in October, 1988, after he had completed training the person hired to succeed him on a permanent basis. According to Christo, Ricciardi left VCA on "good terms," and he provided Ricciardi with a "very strong reference" for his next job.

During the time Ricciardi was employed by VCA, the company was the advertising agency and public relations counsel to LCS, pursuant to a letter agreement.[5] On April 20, 1988, the president of LCS notified VCA that she was terminating their agreement. In early May, 1988, Christo sent a letter to the president of LCS in which he acknowledged receipt of the notice of termination, and he discussed the efforts of Bissett, VCA's media director, in attempting to resolve the budget dispute between VCA and LCS that may have precipitated the termination. Shortly thereafter, Bissett left VCA's employ. Approximately one week after she left VCA, Bissett began rendering professional services to LCS.

VCA alleged that Ricciardi informed Bissett about the contents of Christo's letter to LCS. VCA further alleged that Bissett wrongfully took documents that pertained to the LCS

---

tions. The judge also denied Olmstead's motion for sanctions against counsel to Ricciardi.

[5]The agreement provided that the appointment of VCA was for one year, automatically renewed on a yearly basis, until terminated by either party on sixty days' written notice.

account prior to leaving VCA, and that Ricciardi assisted Bissett in removing the LCS documents. VCA asserted that Ricciardi, without authority, notified various publications that VCA was no longer the advertising agency for LCS.

Christo noticed that LCS files were missing prior to Ricciardi's departure and questioned Ricciardi about the files. Ricciardi consistently denied any knowledge of them. During the course of discovery, the missing files were found in a VCA storage facility.

b. *Padilla's and Greenwood's representation of VCA.* On September 23, 1992, in response to VCA's complaint, Ricciardi filed a motion to dismiss. The statute of limitations was not raised by Ricciardi in that motion. Padilla submitted an opposition to Ricciardi's motion to dismiss (October, 1992), and a memorandum on the fiduciary duty owed by an employee to an employer as requested by the judge who heard oral argument on Ricciardi's motion to dismiss (November, 1992).

In September, 1992, Ricciardi's counsel filed a complaint regarding Padilla with the Board of Bar Overseers (board), on which the board took no action. While the board was investigating the complaint, Padilla advised VCA to seek other counsel. Padilla withdrew from the case in January, 1993, at which point Greenwood appeared as VCA's attorney.

Soon after he entered his appearance, Greenwood filed a motion to extend the time for filing an opposition to Bissett's motion to dismiss. In addition to signing a notice of appearance on behalf of VCA in January, 1993, Greenwood filed a number of motions regarding discovery tracking orders that applied to Ricciardi, and he hired Attorney Brian M. Olmstead to take Ricciardi's deposition.

During Christo's deposition in 1993, Greenwood learned that VCA maintained a storage facility in Saugus. He immediately informed opposing counsel of the existence of the storage facility, and on discovering the missing LCS files at the facility, he promptly withdrew from his representation of VCA (October, 1993).

2. Rule 11 (a) provides, in pertinent part, that "[t]he signature of an attorney to a pleading constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is a good ground to support it; and

that it is not interposed for delay." A "wilful violation" of the rule may subject an attorney "to appropriate disciplinary action," although the rule is silent as to the particular disciplinary measures that may be imposed.[6] The provisions of rule 11 (a) are also applied to motions and other papers by virtue of Mass. R. Civ. P. 7 (b) (2), 365 Mass. 748 (1974).[7]

The Massachusetts Rules of Civil Procedure, adopted in 1974, were patterned on the Federal Rules of Civil Procedure, *Giacobbe* v. *First Coolidge Corp.*, 367 Mass. 309, 315 (1975), and the text of our rule 11 (a) continues to be virtually identical to the text of its Federal analog prior to the latter's amendment in 1983.[8] In construing our rules, we follow the construction given to the Federal rules "absent compelling reasons to the contrary or significant differences in content." *Rollins Envtl. Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 179-180 (1975). We see no reason to depart from this principle of construction here and, in applying our rule 11 (a), we shall rely on the construction given to the pre-1983 version of Fed. R. Civ. P. 11.

Liability under the original Federal rule was predicated on an attorney's wilful filing of a pleading that did not have a "good ground to support it." See 2 Moore's Federal Practice

---

[6]The Reporters' Notes surmise that a "[v]iolation of the [r]ule would probably constitute a breach of DR 7-102(A) and (B), American Bar Association, Code of Professional Responsibility." See Reporters' Notes to Mass. R. Civ. P. 11, Mass. Ann. Laws, Rules of Civil Procedure, at 226 (Law Co-op. 1997). Modeled on the ABA rule, S.J.C. Rule 3:07, Canon 7, DR 7-102 (A) (1), as appearing in 382 Mass. 785 (1981), provides, in pertinent part, that "(A) In his representation of a client, a lawyer shall not: (1) File suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another."

[7]"The rules applicable to captions, signing, and other matters of form of pleadings apply to all motions and other papers provided for by these rules." Mass. R. Civ. P. 7 (b) (2), 365 Mass. 748 (1974).

[8]The only substantive difference between the rules at that time was the provision in the Federal rule that authorized courts to strike pleadings as "sham and false" if the signatory requirements of the rule were violated. The Reporters' Notes to our rule state that "[t]he words 'sham and false' . . . do not seem to add to the force of the [Federal] [r]ule," see Reporters' Notes, *supra*, and, despite the deletion of this phrase from our rule, we have said that rule 11 "imposes an obligation on attorneys . . . to ensure that sham pleadings are not employed." *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 557 n.6 (1976).

§ 11App.101[2], at 11App.-20 (3d ed. 1997). Cf. Fed. R. Civ. P. 11 (1983).[9] The phrase "good ground to support" was interpreted as having both factual and legal elements, see Advisory Committee Note to 1983 Revision to Fed. R. Civ. P. 11, 97 F.R.D. 198 (1983), and Federal courts employed a subjective standard in applying the rule. *Id.* See, e.g., *Nemeroff* v. *Abelson*, 620 F.2d 339, 350 (2d Cir. 1980); *Peter Kiewit Sons' Co.* v. *Summit Constr. Co.*, 422 F.2d 242, 271 (8th Cir. 1969); *Kinee* v. *Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F. Supp. 975, 982-983 (E.D. Pa. 1973). The effect of the rule was to place an affirmative obligation on an attorney signatory to a pleading to be satisfied, in good faith, that "good grounds" existed for the claims therein asserted. See, e.g., *In Re Mid-Atlantic Toyota Antitrust Litig.*, 525 F. Supp. 1265, 1282-1283 (D. Md. 1981), aff'd, 704 F.2d 125 (4th Cir. 1983); *Helfant* v. *Louisiana & S. Life Ins. Co.*, 82 F.R.D. 53, 56-57 (E.D.N.Y. 1979); *Levy* v. *Seaton*, 358 F. Supp. 1, 6 (S.D.N.Y. 1973); *Freeman* v. *Kirby*, 27 F.R.D. 395, 397 (S.D.N.Y. 1961). See also Vairo, Rule 11: A Critical Analysis, 118 F.R.D. 189, 190 (1988); Browne, The Significance of the Signature: A Comment on the Obligations Imposed by Civil Rule 11, 30 Clev. St. L. Rev. 385 (1981); Risinger, Honesty in Pleading and Its Enforcement: Some "Striking" Problems with Federal Rule of Civil Procedure 11, 61 Minn. L. Rev. 1 (1976).

Like our rule, the pre-1983 Federal rule did not specify the kinds of disciplinary action that could be taken by a judge in response to a violation of the rule. See 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1336, at 97 (2d ed.

---

[9]The 1983 amendment to Fed. R. Civ. P. 11 significantly altered the rule by deleting the original rule's reference to "wilful," and by rewriting the sentence tracked by Mass. R. Civ. P. 11 (a) to provide: "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Amendments to Federal Rules of Civil Procedure, 97 F.R.D. 165, 167 (1983). Because the amendment expanded the type of attorney conduct that was sanctionable, it was expected that a greater range of circumstances would trigger violation of the amended rule. Advisory Committee Note to 1983 Revision to Fed. R. Civ. P. 11, *supra* at 198-199.

1990). Cf. Fed. R. Civ. P. 11 (1983).[10] While some Federal courts questioned the propriety of awarding attorney's fees and costs, see, e.g., *Morgan* v. *Prudential Group, Inc.*, 81 F.R.D. 418 (S.D.N.Y. 1979), many courts decided, we conclude persuasively, that such an award was a permissible, and indeed appropriate, sanction for a wilful violation of the original rule. See, e.g., *Public Interest Bounty Hunters* v. *Governors of the Fed. Reserve Sys.*, 548 F. Supp. 157 (N.D. Ga. 1982); *In re Mid-Atlantic Toyota Antitrust Litig.*, *supra*; *Driscoll* v. *Oppenheimer & Co.*, 500 F. Supp. 174 (N.D. Ill. 1980); *Textor* v. *Regents of N. Ill. Univ.*, 87 F.R.D. 751, 754 (N.D. Ill. 1980); *LeGare* v. *University of Pa. Medical Sch.*, 488 F. Supp. 1250, 1257 n.12 (E.D. Pa. 1980); *Kinee* v. *Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F. Supp. 975, 982-983 (E.D. Pa. 1973).

The principles enunciated above lead us to conclude that our rule 11 (a) authorizes a judge to impose attorney's fees and costs where an attorney has failed to show a subjective good faith belief that the pleading was supported in both fact and law. See *Robinson* v. *Dean Witter Reynolds, Inc.*, 129 F.R.D. 15, 18 (D. Mass. 1989). Good faith includes, among other things, an absence of design to defraud or to seek an unconscionable advantage. See Black's Law Dictionary .693 (6th ed. 1990).[11] See also *Hahn* v. *Planning Bd. of Stoughton*, 403 Mass. 332, 337 (1988). Although this standard is less demanding than the objective standard embodied in the amended Federal rule (which obliges attorneys to engage in some prefiling inquiry),[12] see Advisory Committee Note, *supra* at 198, our rule does not

---

[10]By its terms, the 1983 version of the Federal rule mandated sanctions, which explicitly included attorney's fees and costs, on a violation of the rule. The 1983 amendment was intended to reduce the reluctance of courts to impose sanctions and to make the rule more effective in deterring abuses of the litigation process. See Advisory Committee Note, *supra* at 198.

[11]Under the original Federal rule, a conclusion that an attorney acted in bad faith required " 'clear evidence' that the claims [were] 'entirely without color and made for reasons of harassment or delay or for other improper purposes.' " *Nemeroff* v. *Abelson*, 620 F.2d 339, 348 (2d Cir. 1980), quoting *Browning Debenture Holders' Comm.* v. *DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977).

[12]The Appeals Court has stated that "our rule embodies a less stringent standard, bad faith, than that imposed under Federal Rule 11, as amended in 1983." *New England Allbank for Sav.* v. *Rouleau*, 28 Mass. App. Ct. 135, 141 (1989). However, the court has also stated, on three occasions, that our rule requires that the pleadings be based on a "reasonable inquiry," in addition to an absence of bad faith. See *Doe* v. *Nutter, McClennen & Fish*, 41 Mass. App.

excuse an attorney's "wilful ignorance" of facts and law which would have been known had the attorney simply not consciously disregarded them. See generally *West's Case*, 313 Mass. 146, 150-151 (1943).

3. A judge has discretion in imposing sanctions under rule 11 (a), and our function is to determine whether the judge abused that discretion, which includes considering whether proper legal standards were applied and whether there was reasonable support for the judge's evaluation of the facts. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *Media Duplication Servs., Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1238 (1st Cir. 1991). Because our rule employs a subjective standard, we agree with Padilla and Greenwood that the judge committed an error of law when he relied on the amended Federal rule's objective standard in evaluating their conduct.[13] The record is adequate to allow us to decide the case under the applicable subjective standard without a remand. We proceed to review the issue under that standard to ascertain whether either attorney's conduct warranted the imposition of sanctions.

a. *Padilla.* In awarding sanctions against Padilla, the judge concluded that the complaint she filed on behalf of VCA had neither good factual nor good legal ground. He concluded that Christo had "no more than a hunch" that Ricciardi was involved in any alleged wrongdoing regarding the LCS account, relying on part of Christo's deposition testimony that Ricciardi was named as a defendant because Christo "want[ed] to know what role he played in the missing files." He also concluded that no reasonable legal argument could be made that a temporary file clerk owes a fiduciary duty to his employer and thus Padilla was not reasonable in urging the creation of a new duty in that regard. Finally, the judge concluded that Padilla should be sanctioned for including in the complaint a "nonexistent" and "wholly contrived" cause of action for "lost profits."

---

Ct. 137, 142 (1996); *New England Allbank for Sav. v. Rouleau, supra; Bird v. Bird*, 24 Mass. App. Ct. 362, 368 (1987). By interjecting the requirement that some prefiling inquiry be made, the Appeals Court has prescribed a more rigorous standard than that required by the original Federal rule.

[13]The judge concluded that Padilla had violated rule 11 (a) by "failing to make a reasonable inquiry before signing the complaint against Ricciardi." The judge similarly concluded that Greenwood violated rule 11 (a) by "failing to make a reasonable inquiry into the factual and legal support for the charges [against Ricciardi] before he signed an opposition to Ricciardi's [m]otion for [s]ummary [j]udgment."

Padilla asserted in an affidavit that she "believed that the complaint was well grounded in law and fact," and that she "in good faith, believed" Christo's allegations as set forth in the complaint. She supported these statements with a detailed (and unchallenged) explanation of the steps she took prior to filing the complaint.[14] Under our rule, Padilla's affirmations in her affidavit are sufficient to withstand Ricciardi's motion for sanctions. See *In re Mid-Atlantic Toyota Antitrust Litig., supra* at 1283. In so concluding, we differentiate between Padilla's sworn statements, which demonstrate adequate diligence on her part, and Christo's expressed motivations for bringing this lawsuit for which Padilla should not be held responsible.[15]

Furthermore, while we recognize that there are limits to the extent to which an attorney may, in good faith, argue for extensions in existing law, rule 11 (a) "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or

[14]In particular, she stated that prior to filing the complaint, she interviewed Christo and his wife, as well as Christo's permanent administrative assistant, Ricciardi, Bissett, and the president of LCS. She also reviewed another action brought against LCS in which the plaintiff alleged that LCS had engaged in conduct similar to that alleged by Christo, and she interviewed plaintiff's counsel in that action. Padilla further stated that she had represented Christo on other matters. She maintained that she had relied on statements made by Christo in a sworn affidavit in which he stated that he "entrusted Ricciardi and Bissett with confidential information," that "at the time he terminated Bissett, Ricciardi had dominion and control over the LCS file," and that Ricciardi passed VCA's property to Bissett. Finally, Padilla indicated that she "researched some law" to assist her in preparing the complaint, including issues related to applicable statutes of limitations.

[15]Although the judge characterized a portion of Christo's deposition testimony as indicating that Christo was not at all sure of Ricciardi"s alleged role in the missing LCS files, Christo also testified in his deposition that Ricciardi, "as the keeper of the files," "was aware" that "some of the files were missing"; that Ricciardi "made available to [Bissett] the letter that precipitated" Christo's argument with her and her subsequent termination; that "[Ricciardi] became evasive and agitated every time [Christo] tried to question him about [Bissett] or anything to do with the LCS file." In an affidavit attached to VCA's opposition to Ricciardi's motion to dismiss (dated September 22, 1992), Christo further stated that "[w]hile Ricciardi had control over the LCS file, it disappeared"; and that he "[thought] that Ricciardi was responsible for giving Bissett access to proprietary segments of the LCS file." Christo's sworn statements are further indication of good faith on Padilla's part.

other paper was submitted." Advisory Committee Notes, *supra* at 199. Padilla's claim that Ricciardi violated his fiduciary duty to VCA is not so outlandish as to establish bad faith on her part.[16] Nowhere is it indicated that the judge who decided Ricciardi's motion to dismiss considered the claim to be frivolous. In fact, during a hearing on Ricciardi's first motion to dismiss, the judge hearing that motion requested that Padilla prepare a memorandum on the claim. Additionally, in his memorandum and order on Ricciardi's supplemental motion to dismiss, the judge did not conclude that the claim did not apply to Ricciardi, but instead dismissed the claim on other grounds.

The record demonstrates that Padilla proceeded with a good faith belief that VCA's claims against Ricciardi were legally viable. Accordingly, attorney's fees and costs should not have been assessed against her.

Because we conclude that sanctions were improperly imposed on Padilla, we need not address her contentions regarding the inequities in awarding attorney's fees and costs against her where counsel for Ricciardi had threatened to file a complaint with the Board of Bar Overseers if she did not dismiss the complaint against Ricciardi. We take note of Padilla's allegations regarding opposing counsel's unprofessional conduct, see Mass. R. Prof. C. 3.4(h), *post* 1301, 1389 (1998),[17] and remind members of the bar that sanctions may be imposed on attorneys representing either party in a litigation.[18]

b. *Greenwood.* In awarding sanctions against Greenwood, the judge concluded that he violated rule 11 (a) by signing an op-

---

[16]We view Padilla's claim for "lost profits" as merely an analog to the fiduciary claim.

[17]Rule 3.4 (h) of the Massachusetts Rules of Professional Conduct, *post* 1301, 1389, effective January 1, 1998, provides: "A lawyer shall not . . . (h) present, participate in presenting, or threaten to present criminal or disciplinary charges solely to obtain an advantage in a private civil matter."

[18]We also note that counsel for Ricciardi could have terminated this action more than one and one-half years before judgment entered in the Superior Court. The record indicates that in November, 1993, she rejected VCA's offer of a stipulation of dismissal with prejudice and then opposed VCA's motion to voluntarily dismiss. Voluntary dismissal of a claim does not deprive a trial court of its power to impose rule 11 (a) sanctions, see *Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. 384, 398 (1990); *Bakker* v. *Grutman*, 942 F.2d 236, 241 (4th Cir. 1991), but had the dismissal been accepted here, it would have reduced the size of the legal bill Ricciardi sought to recover from Padilla and Greenwood.

position to Ricciardi's motion for summary judgment despite his knowledge that certain claims were time barred. The judge determined that as successor counsel, Greenwood was obliged to investigate the legal and factual sufficiency of the complaint prior to assuming representation of VCA.

Greenwood maintains that the judge erred in awarding sanctions against him because he did not sign any offensive pleadings which would warrant the imposition of sanctions. He relies on the United States Supreme Court's decision in *Pavelic & LeFlore* v. *Marvel Entertainment Group*, 493 U.S. 120 (1989), for the proposition that the "signing attorney" language of rule 11 is to be read literally.[19]

As Greenwood points out, the judge incorrectly found that Greenwood signed the opposition to Ricciardi's motion for summary judgment. In fact, Padilla signed and filed this document prior to Greenwood's appearance in this case.[20] Nevertheless, this factual error does not alter the analysis applicable to Greenwood as successor counsel under rule 11 (a). We reject Greenwood's argument that, when successor counsel assumes responsibility for a pending case, new counsel's liability under the rule is limited to those documents he or she signs. We do not read *Pavelic* to preclude holding successor counsel susceptible to rule 11 (a) sanctions on the basis of a complaint signed by a predecessor where the successor attorney files a pleading indicating his intention to continue prosecution of the action. See *Bakker* v. *Grutman*, 942 F.2d 236, 240 (4th Cir. 1990).

In addition to signing a notice of appearance on behalf of VCA in January, 1993, Greenwood filed a number of motions regarding discovery tracking orders that applied to Ricciardi, and he hired Olmstead to take Ricciardi's deposition. These actions clearly evince Greenwood's intent to continue prosecuting the claims against Ricciardi. In these circumstances, our rule imposes on Greenwood an affirmative obligation to be satisfied, in good faith, that good grounds continued to exist for the

---

[19]*Pavelic & LeFlore* v. *Marvel Entertainment Group*, 493 U.S. 120 (1989), concerned the impermissibility of holding a law firm susceptible to sanctions for a complaint filed by one of its members before the partnership was formed.

[20]The confusion apparently arose from the fact that Bissett had also filed a motion to dismiss while Ricciardi's motion to dismiss was pending. VCA's opposition to Bissett's motion was signed by Greenwood.

claims asserted against Ricciardi in the complaint.[21] Cf. *Turner v. Sungard Business Sys., Inc.*, 91 F.3d 1418, 1421 (11th Cir. 1996) (although only "paper" substitute counsel signed and submitted to court in prosecuting plaintiff's claim was notice of appearance, rule 11 sanctions warranted where he continued to advocate claim despite knowledge that it was meritless).

Ricciardi suggests that, because he adopted the statute of limitations argument raised by Bissett, to which Greenwood responded when opposing Bissett's motion to dismiss, then Greenwood was aware that the claims were time barred as to him. However, Ricciardi did not raise the statute of limitations as a defense until he supplemented his motion to dismiss. This supplemental motion was filed after the LCS files were discovered and Greenwood had withdrawn from the case.[22] Even if we assume that Greenwood was aware that, if the claims were time-barred as to Bissett, they were also time barred as to Ricciardi, we do not believe Greenwood contravened rule 11 (a) by either not withdrawing the complaint as to Ricciardi or moving for voluntary dismissal based on Bissett's statute of limitations argument. In ruling on Ricciardi's motion for summary judgment, even the judge noted that it was unclear whether a claim for breach of fiduciary duty sounds in tort or contract, and thus whether a three- or six-year statute of limitations applied to the claim. He ultimately concluded that it is a tort, and thus determined that the claim was time barred, since any injury suffered by Christo as a result of Ricciardi's alleged wrongful acts would have occurred in 1988. Only after noting the link between VCA's claims for breach of fiduciary duty and for lost profits did he conclude that the latter was similarly time barred.

Furthermore, Greenwood stated that throughout his representation of VCA, Christo maintained that Ricciardi had actively worked with Bissett against VCA, and repeatedly stated that

---

[21]This approach is consistent with the Advisory Committee Notes to the 1993 amendments which indicate that "a litigant's obligations with respect to the contents of [papers subject to rule 11] are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." The effect of this change is to create something in the nature of a continuing duty to monitor the content of signed documents submitted to the court. 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1335, at 17 (Supp. 1997).

[22]The supplemental motion is not included in the record, nor is it noted on the docket sheet.

Ricciardi had improperly removed work product and documents from his office and gave them to Bissett and LCS. On learning of the VCA storage facility, Greenwood immediately informed opposing counsel, and on discovering the missing LCS files at the facility, he promptly withdrew from his representation of VCA. On this record, we conclude that Greenwood did not wilfully violate rule 11 (a), and therefore sanctions were improperly imposed against him.[23]

4. While rule 11 (a) may be criticized for embodying a less stringent standard of conduct than the amended Federal rule, we note that the 1983 amendments to the sanctions provision of Fed. R. Civ. P. 11 generated significant controversy, satellite litigation, and a new "cottage industry." See generally Parness, Fines Under New Federal Civil Rule 11: The New Monetary Sanctions for the "Stop-and-Think-Again" Rule, 1993 B.Y.U. L. Rev. 879, 879.[24] The rule was again amended in 1993, in an effort to remedy the problems that arose in the application of the 1983 amendments and to reduce the number of motions for sanctions. 2 Moore's Federal Practice, *supra* at § 11App.04[2], at 11App.-9. In particular, the 1993 revision clarified that the main purpose of the rule is deterrence, not compensation.[25] Advisory Committee Note to 1993 Amendments to Fed. R. Civ. P. 11, reproduced in 2 Moore's Federal Practice, *supra* at § 11App.04[2], at 11App.-13. See also 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1336, at 45 (Supp.

---

[23]Because we conclude that the judge erred in imposing sanctions against Padilla and Greenwood, we need not discuss their contention that they should not be held jointly and severally liable for attorney's fees and costs incurred when one or the other was not involved in the action.

[24]Numerous commentators criticized the 1983 amendments to rule 11 and the resulting sanctions. See, e.g., Cochran, Rule 11: The Road to Amendment, 61 Miss. L.J. 5, 7 (1991) (objecting to over-broad application of rule 11 sanctions which could deter otherwise desirable litigation); Tobias, Public Law Litigation and the Federal Rules of Civil Procedure, 74 Cornell L. Rev. 270, 301 (1989) (noting that by 1989 there were nearly 1,000 reported opinions involving sanctions and perhaps thousands more unreported opinions); Walker, A Comprehensive Reform for Federal Civil Rulemaking, 61 Geo. Wash. L. Rev. 455, 457 (1992-1993) (the 1983 amendment transformed rule 11 into fountain of litigation and criticism); Note, Plausible Pleadings: Developing Standards for Rule 11 Sanctions, 100 Harv. L. Rev. 630, 632 (1987) (contending that rule 11 sanctions have "undermined the value of open access to court embodied in the liberal pleading regime of the Federal Rules of Civil Procedure").

[25]The 1993 amendment made the imposition of sanctions again discretionary rather than mandatory.

1997). To facilitate this purpose, the 1993 amendment encouraged the use of fines instead of attorney's fees and costs, and contemplated greater use of nonmonetary sanctions such as reprimands, orders requiring mandatory attendance at continuing legal education programs, and referrals to disciplinary authorities. 5A C.A. Wright & A.R. Miller, *supra* at 46. Where attorney's fees and costs are imposed, the amendment requires that they be limited to the amount incurred for services "directly and unavoidably caused by the violation." Advisory Committee Note to 1993 Amendments, *supra*, quoted in 2 Moore's Federal Practice, *supra* at § 11App.04[2], at 11App.-13. Thus the party requesting attorney's fees and costs is under an obligation to mitigate the damages caused by the violation. 2 Moore's Federal Practice, *supra* at par. 11.24[3], at 11-57 — 11-58.

Whether a different standard under our rule 11 (a) should be articulated should first be considered by our Standing Advisory Committee on the Rules of Civil Procedure. Had the amendments to the Federal rule been deemed appropriate for incorporation into our rule, we must assume that the committee would have proposed modifications to the rule. No such proposals have been made. Our committee undoubtedly is aware of the controversy over the evolution of the Federal rule, and the efforts made in 1993 to ameliorate the difficulties created by the 1983 revisions. The committee may wish to review rule 11 (a) in light of this decision and to consider whether any revisions are warranted.

5. The order imposing attorney's fees and costs on Padilla and Greenwood is vacated. An order is to be entered denying Ricciardi's motion for such fees and costs.

*So ordered.*