JEKABS P. VITTANDS & others[1] *vs.* JUDITH SUDDUTH, trustee.[2]

No. 98-P-294.

Essex. November 8, 1999. - June 15, 2000.

Present: BROWN, LENK, & BECK, JJ.

*Practice, Civil,* Summary judgment, Costs, Frivolous action. *Abuse of Process. Emotional Distress. Negligence,* Emotional distress. *Trust,* Nominee trust, What constitutes. *"Anti-SLAPP" Statute.*

In a civil action, the plaintiff-in-counterclaim demonstrated that there were genuine issues of material fact regarding the defendants' state of mind in the counterclaim for abuse of process [405-408], and, in the counterclaim for intentional infliction of emotional distress, regarding the plaintiff's status as the real party in interest [408-410] and regarding the "extreme and outrageous" nature of the defendants' conduct [410-411].

A party in a civil action who did not follow the procedures set forth in G. L. c. 231, § 6F, to timely appeal from the denial of her claim for costs incurred in defending the action did not properly perfect her appeal. [411-412]

In a civil action, a Superior Court judge properly denied a request for sanctions against an attorney pursuant to Mass.R.Civ.P. 11(a). [412-413]

A Superior Court judge correctly denied parties' special motion to dismiss brought under the anti-SLAPP statute, G. L. c. 231, § 59H, where, even if the movants had met their burden of showing that the claims against them were based on their petitioning activities alone with no other basis, the nonmoving party had carried her burden of showing that the moving parties' exercise of their right to petition was devoid of support in law and in fact and that the nonmoving party had suffered actual injury from the movants' conduct. [413-415]

CIVIL ACTION commenced in the Superior Court Department on June 2, 1994.

The case was heard by *Howard J. Whitehead,* J., on a motion for summary judgment, and a special motion to dismiss was heard by him.

[1]H. Todd Cobey, Penny Cobey, David McArdle, Thomas A. Mulkern, Jr., Robert Ammerman, and Jill Ammerman.

[2]Of the Hesperus Avenue Realty Trust.

*Judith E. Sudduth,* pro se.

*Frances S. Cohen (Robert F. Schwartz* with her) for the plaintiffs.

LENK, J. Pro se defendant Judith Sudduth, also plaintiff-in-counterclaim, contends that a Superior Court judge erred in granting summary judgment on her counterclaims for abuse of process and intentional infliction of emotional distress, and in denying her costs under the Declaratory Judgment Act, G. L. c. 231A, and Mass.R.Civ.P. 11(a), 365 Mass. 753 (1974). The plaintiffs, also defendants-in-counterclaim, appeal from the denial of their special motion to dismiss brought pursuant to G. L. c. 231, § 59H, popularly known as the anti-SLAPP[3] statute.

*Facts and procedural history.* At the heart of this case is lot 4A, apparently a quite desirably situated lot with ocean views, located on Hesperus Avenue in the Magnolia section of the city of Gloucester (city). Sudduth, as trustee of the Hesperus Avenue Realty Trust, purchased the six-lot subdivision containing lot 4A in 1985 and sought to develop the subdivision for residential use. By 1994, after approximately nine years of proceedings, Sudduth had obtained from the city and the Commonwealth all of the necessary building and sewage disposal permits that would allow construction of residences on the subdivision finally to go forward.[4]

The plaintiffs are neighbors but not abutters to lot 4A. Sudduth alleges in affidavit form that several of the plaintiffs (the neighbors) confronted her from time to time, informing her that they would never allow anything to be built on lot 4A, that their children had always played on it, and that the neighbors considered it their "private park." According to Sudduth, one of the neighbors, Jekabs P. Vittands, told her in 1985 that he was

---

[3]"The acronym 'SLAPP' (Strategic Lawsuits Against Public Participation) was coined by George W. Pring and Penelope Canan. See Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl. L. Rev. 3, 4 (1989)." *Duracraft Corp.* v. *Holmes Prods. Corp.,* 427 Mass. 156, 160 n.7 (1998).

[4]According to Sudduth's affidavit, these proceedings consisted of appealing to the Department of Environmental Protection (DEP), petitioning for judicial review concerning the relevant permits (Sup. Ct. Civ. Action No. 87-0544), and finally obtaining all of the necessary permits from the board of health, DEP, and the Gloucester Conservation Commission. In March, 1993, a final order by consent was issued by the Superior Court that ordered the city to issue a wetlands permit based on the board of health permit.

going to "take" all her land and later told her that he would prevent the construction of anything on the Hesperus Avenue lots at all costs. The neighbors state that they had been "involved in a series of administrative proceedings and litigation involving the development of Lots 4A, 5A and 6A." Indeed, we had occasion several years ago to observe that the neighbors had been "actively opposing the development of the defendant's property for nine years." See *Vittands* v. *Sudduth*, 41 Mass. App. Ct. 515, 515 n.3 (1996) (*Vittands I*).

In November, 1993, the neighbors' attorney, Brian Cassidy, allegedly discovered for the first time that the city board of health (board) had granted Sudduth an on-site sewage disposal permit in December, 1992. Cassidy had represented the neighbors in matters relating to Sudduth's property since 1989, including the litigation mentioned above. After his discovery, Cassidy sent a letter to the board on December 3, 1993, alleging that the sewage disposal system was in violation of board regulations and requesting a review of the situation. The board never responded to this letter.

On May 11, 1994, Sudduth entered into a purchase and sale agreement for lot 4A with Great Pond Builders. According to Sudduth's affidavit, the sale was to close on July 18, 1994, and the sale proceeds would be her only source of income at that time. Sudduth contends that Great Pond Builders informed her that the neighbors, aware of this pending sales agreement, had trespassed onto her land in order to harass individuals from Great Pond Builders as well as other potential buyers.

On May 31, 1994, approximately five and one-half months after his first letter, Cassidy again wrote to the board, itemizing the sewage disposal system's alleged violations of local and State environmental regulations. Cassidy's letter also stated that the disposal system required a variance and therefore the board's agent did not have the authority to approve the disposal permit issued to Sudduth.

On June 2, 1994, two of the neighbors, Vittands and David McArdle, observed the presence of an employee of a septic system installation company on lot 4A. Believing that the installation of the sewage disposal system was "imminent," the neighbors filed suit against Sudduth in Superior Court the next day, requesting relief in the form of a temporary restraining order and a preliminary injunction to prevent the construction of the disposal system. The neighbors also sought a declaratory

judgment that Sudduth needed variances from the board and the Department of Environmental Protection (DEP) before the plans for the system could be approved by the board.[5] The neighbors' complaint reiterated the allegations made in Cassidy's letters to the board. Curiously, neither the board, the city, nor the DEP were named as parties. The complaint further stated that disposal system variances had been required for other subdivision lots and were denied and that they had expected that lot 4A's system would also require variances pursuant to board regulations.[6] In support of their allegations, the neighbors submitted an affidavit by Vittands, who is an environmental engineer, averring that his review of the sewage disposal system plans submitted by Sudduth showed numerous State and local environmental violations. On June 6, 1994, a hearing was held on the neighbors' motion for injunctive relief. Sudduth did not appear, since neither she nor her counsel apparently knew of the hearing in time to attend, although notice had been served at Sudduth's place of business. A Superior Court judge granted the motion for injunctive relief ex parte.

On Sudduth's subsequent motion, the same judge vacated the preliminary injunction without opinion on June 19. Shortly thereafter, on June 23, 1994, Sudduth filed four counterclaims against the neighbors, claiming abuse of process and intentional infliction of emotional distress, costs under G. L. c. 231, §§ 6 and 7, and requesting sanctions against Cassidy under Mass.R. Civ.P. 11(a). A trial on Sudduth's counterclaims was set for January, 1995.

On November 15, 1994, the judge entered summary judgment without opinion in favor of Sudduth on the neighbors' initial lawsuit. The neighbors did not appeal from this judgment.[7] Meanwhile, Great Pond Builders had opted not to complete the purchase of lot 4A. According to Sudduth's affidavit, they had informed her that they would not close pursuant to the purchase and sale agreement while the neighbors'

---

[5]Because the permit had been issued in December, 1992, the neighbors were time-barred in June, 1994, from appealing the permit to the zoning board of appeals pursuant to c. 40A, § 15 (appeal must be taken thirty days from date permit granted).

[6]The record indicates that lots 5A and 6A required variances, but that lots 1A, 2A, and 3A did not.

[7]According to the neighbors' brief and neighbor David McArdle's affidavit, installation of the septic system began on September 29, 1994, and was completed on October 4, 1994.

claims remained outstanding. In addition, Sudduth contends that the neighbors' action was an impediment to the value and marketability of the lot since no other buyers were interested in purchasing lot 4A due to the pending litigation.

Another round of legal dueling began in January, 1995, when the neighbors filed a special motion to dismiss Sudduth's counterclaims under the anti-SLAPP Statute. On March 28, 1995, a different Superior Court judge allowed the special motion and, pursuant to the statute, also awarded attorneys' fees to the neighbors in the amount of $3,255. Sudduth appealed this dismissal of her counterclaims to this court. While her appeal was pending, Sudduth received a summons in December, 1995, to appear for involuntary bankruptcy. The subdivision containing lot 4A was eventually sold to pay the accumulated taxes on the land.

On October 22, 1996, we reversed the dismissal of Sudduth's counterclaims, holding that the neighbors' anti-SLAPP motion had been filed prior to the effective date of the anti-SLAPP statute, and remanded this case to the Superior Court.[8] The substantive merits of the neighbors' anti-SLAPP motion were not reached. The neighbors' requests for rehearing and further appellate review were both denied without opinion.

After remand, the neighbors filed a renewed special motion to dismiss under the anti-SLAPP statute as well as a motion for summary judgment on Sudduth's counterclaims. On August 6, 1997, a third Superior Court judge heard and, on October 14, 1997, decided these motions. The judge denied the neighbors' special motion to dismiss, holding that Sudduth had met her statutory burden of establishing that the neighbors' complaint was devoid of factual or legal merit.

The judge also allowed the neighbors' motion for summary judgment on all of Sudduth's counterclaims. Both Sudduth and the neighbors appeal.

1. *Sudduth's counterclaims.* Summary judgment was granted in favor of the neighbors on all of Sudduth's counterclaims, namely abuse of process, intentional infliction of emotional distress, c. 231 costs, and rule 11 sanctions. Rule 56(c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on

---

[8]See *Vittands* v. *Sudduth,* 41 Mass. App. Ct. 515 (1996).

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We view the evidence in the light most favorable to the nonmoving party. See *BayBank* v. *Bornhofft*, 427 Mass. 571, 573 (1998). With these principles in mind, we review the granting of summary judgment on each of Sudduth's counterclaims.

a. *Abuse of process.* The essential elements of the tort of abuse of process are "(1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage."[9] *Kelley* v. *Stop & Shop Cos.*, 26 Mass. App. Ct. 557, 558 (1988), quoting from *Datacomm Interface, Inc.* v. *Computerworld, Inc.*, 396 Mass. 760, 775-776 (1986). More specifically, abuse of process has been described as a "form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money." *Cohen* v. *Hurley*, 20 Mass. App. Ct. 439, 442 (1985), quoting from Prosser & Keeton, Torts § 121, at 898 (5th ed. 1984). "It is immaterial that the process was properly issued, [or] that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose . . . . The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed . . . ." *Kelley, supra* at 558, quoting from Restatement (Second) of Torts § 682 comment a (1977). Further, "[t]he ulterior motive may be shown by showing a direct demand for collateral advantage; or it may be inferred from what is said or done about the process." *Ladd* v. *Polidoro*, 424 Mass. 196, 198 (1997), quoting from Prosser & Keeton, Torts § 121, at 899 (5th ed. 1984).

The Superior Court judge, in granting summary judgment to the neighbors on Sudduth's abuse of process claim, held that "the record is insufficient to warrant a fact-finder in concluding that the original complaint was brought for an 'ulterior purpose,' " the only element of Sudduth's claim that was challenged by the neighbors. To the contrary, we think the affidavits

---

[9]"More precisely the word 'process' in the context of abuse of process means causing papers to be issued by a court 'to bring a party or property within its jurisdiction.' " *Silvia* v. *Building Inspector of W. Bridgewater*, 35 Mass. App. Ct. 451, 453 n.4 (1993), quoting from *Jones* v. *Brockton Pub. Mkts., Inc.*, 369 Mass. 387, 390 (1975). The neighbors did not dispute that "process" was utilized, stating in their memorandum in support of their motion for summary judgment that "[f]iling a [c]omplaint for injunctive and declaratory relief is clearly lawful process."

and attached documents supplied by Sudduth present a genuine issue of material fact whether the neighbors had an ulterior purpose in bringing suit against Sudduth.[10]

Sudduth contends that the neighbors' ulterior, collateral purpose was to prevent her from building on lot 4A, thereby allowing them continued access to her property. In support of this, Sudduth attests in her affidavit that Vittands told her when she first purchased the property in 1985 that he "would take all her land" and that he would prevent the construction of anything on her lots "at all costs." She also attests that other neighbors told her that they considered lot 4A their own "private park." She states that she was subjected to nine years of litigation relating to lot 4A, a point essentially confirmed in the neighbors' own submissions to the court. Sudduth avers as well that the neighbors trespassed on her land and confronted potential buyers, including the individuals from Great Pond Builders. Finally, Sudduth attached materials to her affidavits indicating that she had secured all of the proper permits to begin construction, including the permit for the septic system that had been issued approximately one and one-half years before the neighbors filed their complaint contesting it.

Viewing this evidence in the light most favorable to Sudduth, a jury could reasonably infer that the neighbors served their complaint for an ulterior, illegitimate motive, namely to maintain their access to Sudduth's private property by involving the property in protracted litigation before the sale could be finalized. See *Powers* v. *Leno*, 24 Mass. App. Ct. 381, 384 (1987) (jury issue as to whether defendant's statement "if I don't get what I want, I'll make sure these condominiums are never built[,] I'll delay it in court forever, even if I have to spend one million dollars" evidences abutter defendant's ulterior motive of preventing sale to others of land that he sought to purchase). In their motion for summary judgment, the neighbors insist that their goal was instead to ensure that the septic system was legal. We note in this regard that even process that is obtained with probable cause and for a proper purpose does not necessarily preclude liability. See *Kelley*, 26 Mass. App. Ct. at 558.

More significantly, the neighbors' true motivation for filing

---

[10]For the purpose of summary judgment, we deny Sudduth's request to consider the affidavit of John Carter which is dated June 6, 1998, well after the final decision had been docketed on December 9, 1997.

this action is in fact in dispute. In instances such as this, where state of mind is an essential element of the cause of action, summary judgment is disfavored. See *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984); *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). On this record, summary judgment should not have been granted on this claim.

b. *Intentional infliction of emotional distress.* The judge granted the neighbors summary judgment on this claim for two reasons. First, he concluded that the defendant and plaintiff-in-counterclaim trustee could not maintain a personal tort claim because a nominee real estate trust is not a "person" for this purpose.[11] Second, he determined that the neighbors' alleged conduct did not rise to the level of "outrageousness" required by law.

Since (a) tortious intentional infliction of emotional distress is a claim for interference with an individual, Nolan & Sartorio, Tort Law § 19 (1989); (b) a person cannot be held as the property of a trust; and (c) a personal injury cause of action is not transferable and cannot thereby be made the subject of a trust, Restatement (Second) of Trusts § 79 comment d, at 199 (1959); *General Exch. Ins. Corp.* v. *Driscoll*, 315 Mass. 360, 363-364 (1944), we agree that a trustee cannot bring such a claim on behalf of a trust's beneficiary.[12]

However, nominee trusts have characteristics of both agency and trust in that the relationship between the trustee and beneficiary is that of a partnership or principal-agent because the beneficiaries exercise the controlling powers. See *Roberts* v. *Roberts*, 419 Mass. 685, 688 (1995).[13] Although a nominee trust is not a trust in the "strict classical sense" because of the

---

[11]A nominee trust is a trust in which the trustee holds legal title to the trust property for the trust's beneficiaries, but the beneficiaries exercise the controlling powers, and the actions that the trustees may take on their own are very limited. See *Roberts* v. *Roberts*, 419 Mass. 685, 688 (1995); *Worcester* v. *Sigel*, 37 Mass. App. Ct. 764, 768 (1994). Nominee trusts are a common device for holding title to real estate in Massachusetts and one which affords certain tax advantages. See *Federal Deposit Ins. Corp.* v. *Porter*, 46 Mass. App. Ct. 241, 244 (1999).

[12]Most property damage claims and contract claims are assignable, unlike personal injury claims. See *Rubenstein* v. *Royal Ins. Co. of America*, 45 Mass. App. Ct. 244, 246 (1998).

[13]Massachusetts courts have placed emphasis on the partnership or principal-agent relationship in holding that nominee trusts are not trusts for the purpose of imposing direct liability on the beneficiaries. See *Morrison* v. *Lennett*, 415 Mass. 857, 862 (1993); *Worcester* v. *Sigel, supra.* However, "[t]he fact that a

trustee-beneficiary relationship, see Eno & Hovey, Real Estate Law § 15.9 (1991) (Supp. 1999), we decline to hold that the partnership or agency aspect of a nominee trust gives the trustee standing to bring a personal injury cause of action on behalf of the trust's beneficiary. A beneficiary who has suffered a personal injury can bring an action on her own behalf; the involvement of a partner or agent is unnecessary. Thus, whether a nominee trust is a true "classic" trust or not has no bearing on the matter; neither category gives the trustee standing to bring the beneficiary's personal injury action. The inquiry, however, does not conclude here.

On the record before us, there is presented a genuine dispute whether the Hesperus Avenue Realty Trust (Trust) is, in fact, a trust. Sudduth's affidavit states that she has always been "the sole settlor, sole trustee and sole beneficiary" of the Trust.[14] Despite a nominee trust's nontraditional relationship between trustee and beneficiary, such a trust must still adhere to the rule that no trust exists when the same individual is the sole settlor, sole trustee, and sole beneficiary. See *Druker* v. *State Tax Commn.*, 374 Mass. 198, 201 (1978) (no nominee trust created when taxpayer was sole settlor, sole trustee, and sole beneficiary).[15] If this is true of the Trust, then it is not a nominee trust under Massachusetts law, Sudduth having held both legal and equitable title to the trust property at the time when the neighbors brought suit against the Trust.

In summary, if the Trust is a true trust, it has no standing to bring the emotional distress claim[16]; if the Trust is not a trust, then the current defendant and plaintiff-in-counterclaim in this litigation is a nonentity.[17] Whatever the outcome, Sudduth must join the Trust's suit or be substituted for the Trust as the real party in interest. See Mass.R.Civ.P. 17(a), 365 Mass. 763 (1974).

---

nominee trust is held to be an agency in some contexts . . . does not mean that it should be treated as an agency in every instance." *Roberts, supra.*

[14]The record contains no documents pertaining to the Trust.

[15]"One cannot at the same instant be both the single trustee and the sole beneficiary of the same estate." *Cunningham* v. *Bright,* 228 Mass. 385, 389 (1917). See *Langley* v. *Conlan,* 212 Mass. 135, 138 (1912); *Atkins* v. *Atkins,* 279 Mass. 1, 7 (1932). 4 Scott, Trusts § 341, at 524 (4th ed. 1987).

[16]As a rule, a plaintiff who lacks individual standing may not assert the rights of others not before the court. *Klein* v. *Catalano,* 386 Mass. 701, 714 (1982).

[17]This is also true of the abuse of process claim.

Sudduth must be permitted to do so, as her complaint may easily be amended, see *Lancaster* v. *General Acc. Ins. Co. of America*, 32 Mass. App. Ct. 925, 927 (1992), and we are not inclined to dismiss an action because of a possible technical defect in pleading, particularly where, as here, there is ample reason to view Sudduth as the real party in interest. *Ibid.* Summary judgment on the trust issue, then, was improvidently granted unless some other basis exists to conclude that Sudduth's claim cannot survive as a matter of law.

Thus, our next task is to determine whether the Superior Court judge correctly ruled that the neighbors' conduct failed to rise to the level of outrageousness requisite for a claim of intentional infliction of emotional distress. Four elements comprise the tort: "(1) that the actor intended to inflict emotional distress or that she knew or should have known that emotional distress was the likely result of [the] conduct, . . . (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community,' . . . (3) that the actions of the defendant were the cause of the plaintiff's distress, . . . and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable [person] could be expected to endure it.' " *Conway* v. *Smerling*, 37 Mass. App. Ct. 1, 8 (1994), quoting from *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976). The neighbors claimed entitlement to summary judgment solely on the basis that their conduct as alleged was not "extreme and outrageous."

"To be considered extreme and outrageous, the defendant's conduct must be 'beyond all bounds of decency and . . . utterly intolerable in a civilized community.' " *Sena* v. *Commonwealth*, 417 Mass. 250, 264 (1994), quoting from *Agis*, 371 Mass. at 145. In assessing a defendant's conduct, "the jury are entitled to draw reasonable inferences from the totality of circumstances." *Boyle* v. *Wenk*, 378 Mass. 592, 595 (1979). We review the parties' summary judgment submissions as to this element in the light most favorable to Sudduth.

Much of the evidence supporting Sudduth's abuse of process claim applies as well here. The neighbors acknowledged in their submissions to the court that they had been involved in a series of administrative proceedings and litigation involving Sudduth's other lots. Sudduth attests that the neighbors had trespassed on her property and had harassed potential buyers, including Great

Pond Builders, knowing of the pending sale of lot 4A to the latter. Sudduth avers as well that Vittands told her as long ago as 1985 that he would "take" her land and prevent construction on it at all costs.

"A trier of fact would be entitled to put as harsh a face on the actions of the [neighbors] as the basic facts would reasonably allow." *Richey* v. *American Auto. Assn.*, 380 Mass. 835, 839 (1980). Moreover, "[t]here is an issue for the jury if reasonable people could differ on whether the conduct is 'extreme and outrageous.' " *Brown* v. *Nutter, McClennen & Fish*, 45 Mass. App. Ct. 212, 219 (1998), quoting from *Agis*, 371 Mass. at 145-146.

From this evidence, a trier of fact could conclude that, after persisting over many years in various efforts to prevent Sudduth from building on her property, the neighbors filed their complaint as a last-ditch effort to maintain their "private park" by entangling the property in additional and arguably meritless litigation on the eve of its sale. See *Simon* v. *Solomon*, 385 Mass. 91, 95, 97 (1982) (persistent failure by landlord to relieve flooding problem which resulted in water and sewage entering tenant's apartment was extreme and outrageous); *Boyle*, 378 Mass. at 596 (persistent misconduct by private investigator). It is well to recall in this regard the words of Learned Hand: "I must say that as a litigant I should dread a lawsuit beyond almost anything else short of sickness and death." Hand, The Deficiencies of Trials to Reach the Heart of the Matter, in 3 Lectures on Legal Topics 89, 105 (1926), quoted in Shapiro, The Oxford Dictionary of American Legal Quotations 304 (1993). Reasonable people might well see the neighbors' conduct as extreme and outrageous and, accordingly, summary judgment is not appropriate on this count of Sudduth's complaint.

c. *Claims for costs under G. L. c. 231, § 6F.*[18] Sudduth appeals the Superior Court judge's denial of her claim for costs she incurred in defending against the neighbors' lawsuit. General Laws c. 231, § 6F, states, in relevant part, "[u]pon motion of

---

[18]Sudduth's complaint had requested costs under G. L. c. 231A, §§ 6 and 7, the Declaratory Judgment Act. Sudduth, however, did not bring a declaratory judgment action and these sections are thus inapplicable to her claims. Because the Superior Court judge chose to treat Sudduth's claim as if she filed a motion pursuant to G. L. c. 231, § 6F, however, we review his ruling on that basis.

any party in any civil action . . . the court may determine, after a hearing, as a separate and distinct finding, that all or substantially all of the claims . . . made by any party . . . were wholly insubstantial, frivolous and not advanced in good faith. The court shall include in such finding the specific facts and reasons on which the finding is based." The Superior Court judge observed that the neighbors initiated "a needless and costly round of legal dueling." He declared nonetheless that he · was unable to brand their conduct as bad faith, concluding instead that the neighbors (at least one of whom is apparently a member of the Massachusetts bar) had been "operating under a misunderstanding concerning the import of prior administrative and Court proceedings."

The only route for appealing the judge's c. 231, § 6F, decision is now foreclosed. Pursuant to G. L. c. 231, § 6G, Sudduth was required to appeal the judge's decision to a single justice of this court within ten days of receiving notice of it. See *Ben* v. *Schultz*, 47 Mass. App. Ct. 808, 810 (1999). Since Sudduth failed to follow the procedures set out in § 6G to perfect her appeal, the panel is without jurisdiction to decide the matter. See *Palmer* v. *Murphy*, 42 Mass. App. Ct. 334, 341-342 (1997). See also *Bailey* v. *Shriberg*, 31 Mass. App. Ct. 277, 283-284 (1991).

d. *Claim for costs under rule 11*. Sudduth appeals the Superior Court judge's denial of her request for sanctions against the neighbors' attorney pursuant to Mass.R.Civ.P. 11(a), 365 Mass. 753 (1974). Sudduth argues that the attorney wilfully brought a frivolous lawsuit. The Superior Court judge noted that while the neighbors were entitled to "no badge of merit for their actions," he was unable to brand the attorney's conduct as "bad faith" and declined to impose sanctions.

Rule 11 "authorizes a judge to impose attorney's fees and costs where an attorney has failed to show a subjective good faith belief that the pleading was supported in both fact and law." *Van Christo Advertising, Inc.* v. *M/A-COM/LCS*, 426 Mass. 410, 416 (1998). See Mass.R.Civ.P. 11(a). We review a judge's rule 11 decision for an abuse of discretion. See *Van Christo, supra* at 417.

We agree with the Superior Court judge that the issue is "somewhat close." The attorney had represented the neighbors since 1989 in other matters involving Sudduth's property and presumably had much more than a passing familiarity with the

issues surrounding lot 4A. However, the judge observed that there was some ambiguity concerning the import of prior administrative and court proceedings that permitted Sudduth to build on her property which may have caused a "misunderstanding." The attorney also submitted a detailed affidavit, which Sudduth has not challenged, relating the steps he took prior to filing the complaint. See *Van Christo*, 426 Mass. at 418. He also averred in his affidavit that he believed in good faith that an emergency situation existed when the installation of the septic system on lot 4A commenced after the board failed to respond to his letters. *Ibid.* Furthermore, we must differentiate between the attorney's sworn statements and the neighbors' expressed motivations for bringing their suit, for which the attorney should not be held responsible. *Ibid.* For these reasons, we affirm the Superior Court judge's denial of rule 11 sanctions.

2. *Anti-SLAPP special motion to dismiss.* We now turn to the neighbors' special motion to dismiss filed pursuant to the anti-SLAPP statute. SLAPP actions are defined as "meritless suits" that use litigation to "intimidate opponents' exercise of rights of petitioning and speech." See *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 161-164 (1998). The anti-SLAPP statute, G. L. c. 231, § 59H, which was enacted in 1994, was designed to immunize parties from claims based on their petitioning activities by allowing a party to file a special motion to dismiss. See *Duracraft, supra* at 164-167; G. L. c. 231, § 59H. In filing each of their special motions to dismiss, the neighbors maintained that Sudduth's counterclaims were a SLAPP suit; according to the neighbors, she was attempting to punish them for their efforts to obtain governmental relief from what they reasonably believed to be an imminent environmental and health hazard.[19]

*Duracraft* outlines the burden that each party must meet

---

[19]The neighbors claim that the decision by the second Superior Court judge who allowed their special motion cannot be disturbed, as that ruling constituted the "law of the case." The neighbors' reliance on this doctrine is misplaced. The "law of the case" doctrine reflects the reluctance of a second judge to rule differently from the first judge on a case, issue, or question of fact or law once decided by final judgment or on appeal. See *King v. Driscoll*, 424 Mass. 1, 7-8 (1996) (issue decided in an earlier appeal not open to reconsideration on appeal after remand); *Goulet v. Whitin Mach. Works, Inc.*, 399 Mass. 547, 554 (1987) (trial judge not precluded from deciding anew pretrial judge's denial of a motion to amend a complaint). The question of whether Sudduth's counterclaims amounted to a SLAPP suit was never decided in *Vittands I*; the

when a special motion to dismiss has been filed pursuant to the anti-SLAPP statute. See *Duracraft*, 427 Mass. at 167-168.[20] See also *McLarnon* v. *Jokisch*, 431 Mass. 343, 348-349 (2000). In order to assert protection for its petitioning activities, the special movant must make a threshold showing through the pleadings and affidavits that the claims against it are based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities. *Duracraft, supra.* Once the special movant so demonstrates, the burden shifts to the nonmoving party to show that (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party. *Id.* at 168. See *McLarnon, supra;* G. L. c. 231, § 59H. We review the judge's decision regarding such a special motion to dismiss to determine whether there was an abuse of discretion or error of law. *McLarnon, supra* at 349.

Applying these burdens to the present case, we conclude that the judge's denial of the neighbor's anti-SLAPP motion was appropriate. Even if we were to assume without deciding that the neighbors had met their burden as the special movant, Sudduth nonetheless met her own statutory burden of showing that the neighbors' suit was devoid of reasonable factual or legal support. As discussed above, Sudduth has submitted affidavits and documents showing that she had obtained all of the necessary permits from the proper authorities for her proposed sewage disposal system before the neighbors commenced the declaratory judgment action solely against her. As Sudduth points out, the neighbors could not have obtained meaningful declaratory relief against her in any event since their suit failed to include a necessary party: the board, which issued the disposal permit. See G. L. c. 231A, § 8. The neighbors do not challenge the fact that they failed to file any timely administrative or judicial appeals concerning the disposal permit. Nor did the neighbors take an appeal from the entry of judgment against them on their complaint against Sudduth. These facts suffice to show that the

order allowing the neighbors' special motion was reversed because it was brought prematurely. Moreover, the law of the case doctrine is permissive and not mandatory. See *Potter* v. *John Bean Div. of Food Mach. & Chem. Corp.*, 344 Mass. 420, 427 (1962).

[20]The Supreme Judicial Court's decision in *Duracraft* was rendered while the present appeal was pending. Therefore, we review the dismissal of the neighbors' anti-SLAPP motion under the standards set forth by *Duracraft*.

neighbors' suit was devoid of reasonable factual or legal support.

Sudduth also met her second burden under *Duracraft* by demonstrating that the neighbors' acts caused her actual injury. Sudduth has come forward with supporting affidavits to show that she suffered both financial and personal injuries due to the neighbors' acts.[21] We accordingly conclude that Sudduth met her burden as the nonmoving party and that the neighbors' anti-SLAPP motion was correctly denied by the judge.

Because summary judgment should not have entered on Sudduth's abuse of process and emotional distress claims, those claims are remanded for trial. We affirm the dismissal of all other claims and motions in this action.

*So ordered.*

---

[21]In support of these contentions, Sudduth submitted affidavits from John Hegarty, the Trust's certified public accountant, and Cheryl Ferris, Sudduth's clinical social worker.