FEDERAL DEPOSIT INSURANCE CORPORATION *vs.* RONALD A.
PORTER, individually and as trustee,[1] & another.[2]

No. 96-P-1169.

Plymouth. January 29, 1998. - January 27, 1999.

Present: KASS, SMITH, & FLANNERY, JJ.[3]

*Mortgage,* Foreclosure, Action for deficiency. *Trust,* Nominee trust, Personal
  liability of beneficiary. *Contract,* Trustee. *Practice, Civil,* Summary judg-
  ment.

In an action brought by a bank against a trustee and the two beneficiaries of a
  trust to recover a deficiency on a foreclosure sale, the judge correctly ruled
  that the trust that had owned the property in question was a nominee trust
  [243-244]; however, the judge incorrectly ordered summary judgment in
  favor of the bank where disputed issues of material fact remained with
  respect to the trust beneficiaries' liability on the loan documents executed
  by the trustee [244-245].

CIVIL ACTION commenced in the Superior Court Department on
November 1, 1991.

The case was heard by *John J. O'Brien,* J., on motions for
summary judgment.

*Richard B. Michaud* for Ronald A. Porter.

*Lawrence D. Shubow* for Helen R. Porter.

*Kathleen C. Engel* for the plaintiff.

SMITH, J. Federal Deposit Insurance Corporation (FDIC), as
the receiver/liquidating agent for Landmark Bank for Savings
(bank), brought an action against the defendants, Ronald A.
Porter, as sole trustee of L. A. Realty Trust (trust), and against
Mr. Porter and his wife, Helen R. Porter, individually as coben-
eficiaries of the trust. The action was brought by the FDIC to

---

[1]Of L. A. Realty Trust.

[2]Helen R. Porter, individually.

[3]Justice Flannery participated in the deliberation on this case prior to his
death.

recover a $2,000,000 deficiency resulting from the bank's foreclosure sale of a shopping center known as Hyannis Village. Before the foreclosure sale, Hyannis Village was owned by the trust.

The Porters moved for summary judgment on count II of the FDIC's amended complaint.[4] That count alleged, among other things, that the Porters, as cobeneficiaries, were personally liable for the deficiency. The Porters claim that prior to making the loan, the bank had agreed that the trust would be the sole obligor under the note if there was a default. The FDIC cross-moved for summary judgment, claiming that, as a matter of law, the Porters, as beneficiaries of a nominee trust, were individually liable for the trust's obligations. After a hearing, a Superior Court judge issued a memorandum of decision which denied the Porters' motion for summary judgment and granted the FDIC's motion as to liability.[5]

The Porters filed a motion for reconsideration which was denied without a hearing. They then filed a second motion for reconsideration and various other motions, including a motion for the FDIC to elect a judgment against either the trust or the individual defendants. The FDIC opposed the motions and filed a motion to strike and for sanctions, which the Porters opposed. The judge denied the Porters' second motion for reconsideration and allowed the FDIC's motion to strike, but denied any sanctions.

On appeal, the Porters claim that the judge committed error in allowing the FDIC's motion for summary judgment.[6] They also argue that the judge erred when he failed to consider, and subsequently struck, Mr. Porter's supplemental affidavit and the deposition testimony of Peter Conley, a bank loan officer; the testimony allegedly contradicted Conley's affidavit which the FDIC had submitted in support of its summary judgment motion.

1. *The allowance of the FDIC's summary judgment motion.* The basic facts — although not the material ones — are not disputed. In June, 1989, Mr. Porter, as trustee of the trust and as

---

[4]Count I was against the trust.

[5]The parties later filed a stipulation that the damages amounted to $2,146,118.98 as of February 9, 1996. The Porters did not admit liability and reserved all rights of appeal.

[6]The Porters did not appeal the judge's denial of their summary judgment motion.

directed by the beneficiaries, executed and delivered a promissory note (note) to the bank in the amount of $2,999,000. The note was secured by a mortgage and security agreement on Hyannis Village. The note and all of the documents relating to it were signed by Mr. Porter as follows: "Ronald A. Porter, as Trustee of L. A. Realty Trust and not individually." The last three words were added to the signature block in handwriting and underscored.

Conley, who was the senior loan officer and vice-president of the bank, was responsible for negotiating the loan to the trust. During negotiations, Conley asked Mr. Porter to provide the bank with a personal guaranty; Porter refused. The bank then agreed to accept a $120,000 certificate of deposit from Mr. Porter as additional security. Mr. Porter also subordinated a $735,000 mortgage that he personally held on Hyannis Village.

In August, 1990, the terms of the original loan were modified and Mr. Porter again signed the modification agreement, "Trustee of L. A. Realty Trust and not individually." Again, the words "and not individually" were added in handwriting and the word "not" was underscored. Some time in June, 1991, the trust defaulted on the note. In October, 1991, the bank sent three demand letters for payment to the Porters, one to Mr. Porter as trustee of the trust, one to him individually, and one to Mrs. Porter individually. On March 6, 1992, the bank obtained title to Hyannis Village through foreclosure. The proceeds received by the bank at the foreclosure sale were approximately $2,000,000 short of the principal and the interest then due on the note.

In allowing summary judgment in favor of the FDIC, the motion judge found that the trust was a nominee trust and, as such, the Porters were individually liable as beneficiaries. The judge ruled that Mr. Porter's signing of the documents "as Trustee of L. A. Realty Trust and not individually" arguably limited his liability as trustee, but that it did not limit the liability of the Porters as beneficiaries of the trust.

Our review of the issues raised by the Porters is "confined to an examination of the materials before the court at the time the rulings were made." *Fidelity Mgmt. & Research Co.* v. *Ostrander*, 40 Mass. App. Ct. 195, 200 (1996), quoting from *Cullen Enterprises, Inc.* v. *Massachusetts Property Ins. Underwriting Assn.*, 399 Mass. 886, 889-890 n.9 (1987). See

*Voutour* v. *Vitale*, 761 F.2d 812, 817 (1st Cir. 1985), cert. denied sub nom. *Saugus* v. *Voutour*, 474 U.S. 1100 (1986).[7]

As has been stated, Mr. Porter is the sole trustee of the trust and both he and his wife are the only beneficiaries. "When there is a parallel identity of trusteeship and ownership in connection with the holding of title to real estate by trustees, it may be inferred that the trust vehicle is a 'nominee trust,' a common device for holding title to real estate in Massachusetts and one which affords certain tax advantages." *Apahouser Lock & Security Corp.* v. *Carvelli*, 26 Mass. App. Ct. 385, 388 (1988). Here, the parallelism was imperfect because Mr. Porter was trustee for himself and his wife. The declaration of the trust, however, provided for a degree of control by the beneficiaries that is consistent with a nominee trust. We agree with the motion judge and the parties that the trust is a nominee trust.

"In the case of nominee trusts, liability has been imposed directly upon the beneficiaries, see *Morrison* v. *Lennett*, 415 Mass. [857], 862 [(1993)], the theory being that the relationship created by such an instrument is in the nature of a partnership and not a trust, see *First Natl. Bank* v. *Chartier*, 305 Mass. 316, 320 (1940), or that the trustees were merely the agents 'for the principals' convenience.' *Apahouser Lock & Sec. Corp.* v. *Carvelli*, 26 Mass. App. Ct. 385, 388 (1988)." *Sylvia* v. *Johnson*, 44 Mass. App. Ct. 483, 485-486 (1998).

However, a beneficiary's liability in a nominee trust may be limited by express language either in the trust agreement itself (where the creditor knew or should have known of the language), see *Sylvia* v. *Johnson*, *supra* at 485-487, or express language in the note or contract. See *First Natl. Bank* v. *Chartier*, *supra* at 322 (beneficiaries in a nominee trust liable in a breach of contract action on the grounds that "[t]he note of the company that [was] held by the [creditor] [did] not express a contract that the holder must look only to the funds or property of the company for its payment").

Whether the party entering the contract with the trustee has

---

[7]Because of our decision in this matter, we do not reach the Porters' claim that the judge committed error in allowing the FDIC's motion to strike certain documents, and the judge's denial of other Porter motions filed after the judge ruled on the summary judgment motions.

Because we are limiting our review to the materials before the motion judge, we deny the FDIC's motion to dismiss the Porters' appeal because of alleged improper briefs and appendix.

agreed to look only to the trust assets for payment "is a classic question of the parties' intention. If the contract is unambiguous on the point, it will, absent fraud, govern." *First Eastern Bank, N.A.* v. *Jones*, 413 Mass. 654, 662 (1992). *Sylvia* v. *Johnson*, *supra* at 486 ("the underlying issue is the intention of the parties").

What emerges from the conflicting affidavits in the present matter is that Mr. Porter's insertion and the bank's acceptance of the words "and not individually" in the loan documents created an ambiguity as to the parties' intentions about whether the bank would look only to the trust res for payment in case of default. "When intent is at the core of a controversy, summary judgment seldom lies." *Madden* v. *Estin*, 28 Mass. App. Ct. 392, 395 (1990). The handwritten and underscored words "and not individually" that were added to the loan documents are powerfully suggestive of a nonrecourse note. See *Rand* v. *Farquhar*, 226 Mass. 91, 96-98 (1917); *Sylvia* v. *Johnson*, *supra* at 486-487. It is the formulation often used to declare that a note and other debt instruments are given on a nonrecourse basis. If that were the intent, neither Mr. Porter nor Mrs. Porter is personally liable on the Hyannis Village loan documents. Whether a nonrecourse loan was the intended consequence of the handwritten words of limitation is appropriately a matter for trial rather than summary judgment.

Therefore, the summary judgment in favor of the FDIC is reversed.[8] The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[8]The FDIC argues that if we hold that Mr. Porter is not liable individually, Mrs. Porter, in any event, is liable as a matter of law. The record shows that Mrs. Porter, as a cobeneficiary, joined in directing the trustee, Mr. Porter, to sign the note and accompanying documents. We can find nothing in this record that would support the allowance of summary judgment against her alone.