Frison, Shannon, J.
The defendant, Clifford Spencer (“Mr. Spencer”), is charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of G.L.c. 90, §24,[1] operating a motor vehicle upon a public way without a license, and operation of a motor vehicle without a certified functioning ignition interlock device. Mr. Spencer was initially arraigned on the same crimes in Worcester District Court. Before the Court is Mr. Spencer’s Motion to Adopt Rulings of the District Court.
For the reasons that follow, Mr. Spencer’s motion is ALLOWED.
BACKGROUND
On November 2, 2015, Massachusetts State Trooper Joseph Conley (“Trooper Conley”) arrested Mr. Spencer on suspicion of operating a motor vehicle while under the influence of liquor.[2] The Worcester District Court issued a complaint charging Mr. Spencer with operating under the influence of liquor, fifth offense, operating a motor vehicle without an ignition interlock device installed, a marked lanes violation, an inspection sticker violation, and unlicensed operation of a motor vehicle. Mr. Spencer was arraigned in the Worcester District Court on November 3, 2015.
The District Court proceedings lasted approximately three and a half months prior to Mr. Spencer’s indictment and arraignment in the Worcester Superior Court on February 22, 2016. During this period in the District Court, two trial dates were scheduled and multiple rulings on evidentiary matters were made.
At arraignment, Attorney Hillary Knight represented Mr. Spencer, and the Commonwealth filed a motion requesting a dangerousness hearing to determine whether Mr. Spencer should be held without bail pursuant to chapter 276 section 58A of the Massachusetts General Laws. On November 4, 2015, the case was reassigned by the Committee for Public Counsel Services to Attorney James Fanale. On November 5th the Commonwealth provided to defense counsel Mr. Spencer’s board of probation record, an 11-page Massachusetts State Police document entitled “Administrative Journal,” and a two-page “Driver History.”
On November 16, 2015 the District Court (Ginsburg, J.) ordered that Mr. Spencer be held in custody without bail pursuant to the dangerousness statute. On that same day, a pretrial conference report was filed with the court. The District Court continued the case to December 15, 2015 for compliance and election and a hearing on the Commonwealth’s Motion for Leave to Summon Medical Records prior to trial. The Commonwealth sought records pertaining to Mr. Spencer’s visit to Mary Lane Hospital on the morning of his arrest, specifically mentioning records of blood alcohol analysis that it alleged existed.
On December 13, 2015 the District Court (Mandell, J.) denied the Commonwealth’s Rule 17 motion. The case was continued to January 15, 2016 for another compliance and election date. On January 15, 2016, the case was given a trial date of February 12, 2016.
On February 11, 2016 the day before the first scheduled trial date, the Commonwealth informed defense counsel that it wished to advance the case and request a continuance of the trial date. Defense counsel did not agree to the case being brought forward nor to a continuance of trial. The prosecutor conceded that he did not provide discovery to defense counsel and had not even summonsed any witnesses for the trial scheduled to be held the very next day.
*578 Subsequently, the Commonwealth had the case advanced before the District Court (Despotopulos, J.). The District Court denied the Commonwealth’s motion to continue trial. When the court inquired as to Trooper Conley’s availability despite having not been summonsed, the Commonwealth represented that Trooper Conley would not be able to be at the Worcester District Court on the date of trial as he lived several hours away. The Commonwealth was unable to provide a date when Trooper Conley would next be available. Further, while the Commonwealth cited its continued desire for medical records and blood tests of Mr. Spencer, it offered no answer to the District Court’s inquiries as to what information it had that suggested blood was actually taken from the defendant. When asked specifically what actions the prosecutor had taken since December 15,2015 to tiy again to access these medical records, the prosecutor mentioned only that he had met with another prosecutor who reviewed his affidavit.
On the trial date of February 12, 2016, defense answered ready for trial. The Commonwealth answered not ready and requested a continuance again. The defense objected to that request. During the first call of the case, the prosecutor reported that he was not ready for trial because he was awaiting results of blood tests that were performed on Mr. Spencer. However, the Commonwealth had no blood in its custody and control to be tested and had taken no further action requesting any medical records since its Rule 17 motion was denied two months prior. Trooper Conley did not appear for trial, nor had he even been summonsed. Later that same morning and upon second call, the defense answered ready for trial again. The Commonwealth asked for a continuance again, to which the defense objected. The prosecutor stated to the District Court that he had conferred with others in the District Attorney’s Office and that they had determined that this case would be indicted and proceed in Worcester Superior Court. The defendant filed his Motion to Exclude Evidence for Failure to Provide Discovery, which asked that all discovery not yet provided to defense counsel be excluded from trial. The District Court allowed that motion to exclude evidence (LoConto, J.), prohibiting the Commonwealth from introducing anything other than the items provided on November 5, 2015. Among the evidence ordered excluded at trial were all prior certified convictions of Mr. Spencer, thus effectively preventing Commonwealth from proving the subsequent offense portion of the operating a motor vehicle under the influence of liquor indictment, fifth offense. Also ordered excluded were any documents from the Registry of Motor Vehicles other than the two-page Driver History already provided the defendant. That ruling effectively prevented the Commonwealth from proving two indictments—operating a motor vehicle without an ignition interlock device and unlicensed operation of a motor vehicle. Lastly, any medical records (which the Commonwealth still did not have, anyway) were also excluded.
The District Court (LoConto, J.) told the Commonwealth that if the case was not indicted by the next trial date, then it would be dismissed in the District Court. The court asked defense counsel for trial date, and defense counsel requested February 16, 2016. The Commonwealth stated that it could not proceed to trial on that date. The court inquired why, and the prosecutor said that he was obligated to try another Worcester District Court case in which the defendant was charged with operating under the influence of alcohol, fifth offense. Due to those obligations, the prosecutor stated he was unable to handle trial in this matter on the requested date. After some discussion about the prosecutor’s other matters, the District Court set a second trial date of February 18, 2016.
On February 18, 2016—the second scheduled trial date—the defense answered ready for trial again. This time the assigned prosecutor’s supervisor answered not ready for trial on behalf of the Commonwealth and requested a continuance again. In making its request, the Commonwealth stated that on February 16, 2016 Trooper Conley had in fact come to the Worcester Courthouse and testified before the grand jury and on this case. That was the same day that the Commonwealth had indicated to the District Court that it would be unable to try its case. The Commonwealth also apprised the District Court that it used the grand jury procedure to subpoena Mr. Spencer’s medical records from the hospital. These were the same records sought in its failed Rule 17 motion more than two months prior. The supervising prosecutor told the court that the Commonwealth was awaiting these records in order to present them to the grand jury in its attempt to seek indictment.
So for the second straight trial date, Trooper Conley did not appear for trial. And for the second straight trial date, the Commonwealth refused to summons the trooper for that trial. In response to questioning from the District Court as to why the Commonwealth had waited so long to begin the process of indictment, the supervising prosecutor emphasized the importance of the blood work it sought from Mr. Spencer’s medical records. That supervising attorney also stated that it was the policy of the District Attorney to indict cases in which a person is charged with operating under the influence of liquor as a fourth offense or greater. This policy was cited despite the fact that the Commonwealth conceded to trying a fifth offense operating under the influence of alcohol case in the very same District Court just a few days prior.
The District Court judge stated he was inclined to dismiss the case but that he would consider continuing it for one more day until February 19, 2016, if the supervising prosecutor was representing to the court that the Commonwealth could finish its presentation to the grand jury, secure indictments, and arraign Mr. *579 Spencer in Superior Court by the end of the day on February 19, 2016. Later on the 18th the supervising prosecutor represented to the court that Trooper Conley would be again coining to the Worcester Courthouse to give further testimony to the grand jury the following morning at 9:00 A.M.—despite the fact that he failed to appear at trial. The supervising prosecutor further stated that the medical records would have been returned via the grand jury subpoena and that the indictment could be returned by the deadline. The defense objected again to the continuance and asked the court to dismiss the case based on violations of Mr. Spencer’s due process and speedy trial rights. The District Court continued the case to February 19, 2016 for status, stating no further continuances would be allowed in the District Court. Finally, at the request of the Commonwealth and upon no uncertain terms that the District Court was about to dismiss the matter, the Superior Court (Frison, J.) arraigned Mr. Spencer on February 22, 2016. He was subsequently held on dangerousness by the Superior Court and remains so held.
DISCUSSION
Mr. Spencer contends that this Court should adopt the District Court’s Rule 14 sanctions and exclude evidence relating to Mr. Spencer’s prior convictions, ignition interlock device, and unlicensed operation under the principles of: (1) issue preclusion; (2) due process; and (3) the law of the case doctrine. This Court considers each argument in turn and rules that the District Court’s rulings are, indeed, the law of the case and upholds the defendant’s due process rights.
I. Issue Preclusion
“The doctrine of collateral estoppel, also known as issue preclusion, provides that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.” Kimbroughtillery v. Commonwealth, 471 Mass. 507, 509 (2015) (internal quotations and citation omitted). The doctrine may be applied in criminal cases under the Fifth Amendment’s protections against double jeopardy as well as common-law principles derived from civil proceedings. Id. at 509-10 (collecting cases). This Court concludes that Mr. Spencer cannot prevail under either source of this doctrine.
First, collateral estoppel based on double jeopardy does not apply to this case. “It is well established that jeopardy attaches in a jury trial when the jury is sworn, and in a jury-waived trial when a judge begins to hear evidence.” Commonwealth v. Love, 452 Mass. 498, 503 (2008). Here, however, jeopardy did not attach because the District Court action was dismissed before any jurors or witnesses were sworn.
Second, the common-law collateral estoppel doctrine does not apply. See Kimbroughtillery, 471 Mass. at 511 (collecting cases). This theory of collateral estoppel applies where: (1) an issue was actually litigated in an earlier action; (2) there was an avenue for review of the prior ruling on the issue; and (3) there is a mutuality of the parties. Commonwealth v. Williams, 431 Mass. 71, 74 (2000). Here, the Commonwealth did not have an avenue for review of the District Court’s discovery rulings.[3] To the extent that Mr. Spencer argues that the Commonwealth could have appealed the sanctions to the Supreme Judicial Court under G.L.c. 211, §3, which establishes the Court’s supervisory powers over lower courts, his argument fails.[4] The Supreme Judicial Court has held that it does “not view the possibility of review of interlocutory decisions under G.L.c. 211, §3 ... as a right of appeal for purposes of collateral estoppel.” Commonwealth v. Scala, 380 Mass. 500, 507 n.8 (1980).
II. Due Process
Mr. Spencer contends that it would be fundamentally unfair to allow the Commonwealth to avoid the District Court’s discovery sanctions and begin this trial with a “clean slate.” “(T]he concept of fundamental fairness [ ] is at the core of due process.” Commonwealth v. Ly, 450 Mass. 16, 22 (2007). Specifically, Mr. Spencer analogizes this case to Commonwealth v. Thomas, where the Court held that the Commonwealth violated the defendant’s right to a speedy trial. See Commonwealth v. Thomas, 353 Mass. 429, 432 (1967). That case is instructive.
In Thomas, a prosecutor assigned to a District Court trial requested a thirty-day continuance on the scheduled trial date over the defendant’s objection without providing a reason for his request. Id. at 430. The request violated G.L.c. 276, §35, which prohibited the District Court from granting delays in excess of “ten days at any one time against the objection of the defendant.” Id. at 430. The prosecutor then refused to continue the case and immediately filed a nolle prose-qui without providing a basis in violation of G.L.c. 277, §70A as it existed at that time. Id. The Supreme Judicial Court noted that the prosecutor’s egregious conduct amounted to an ultimatum meant to compel the District Court to grant an illegal continuance: “Either you grant the continuance I request or I will take the case out of your hands.” Id. at 430-32. The Court concluded that the resulting delay violated the defendant’s constitutional right to a speedy trial. Id. at 431.
Although the Commonwealth’s ultimate decision to present evidence to a Superior Court grand jury for purposes of obtaining an indictment is entitled to a presumption of good faith (see Commonwealth v. Bernardo B., 453 Mass. 158, 167 (2009) (“Prosecutor-ial decisions enjoy a presumption of good faith”)), this case smacks of procedural unfairness in the way that the decision was manifested. After being directed to a trial on the merits, the Commonwealth essentially decided to switch courts and free itself of the tight reign the District Court had over the case and the *580 process by which Mr. Spencer would be tried. To the extent that the Commonwealth’s discovery presentation in District Court violated procedural rules, it has since been sanctioned and now finally stands ready for trial. The consequences of those sanctions should not disappear if the Court is to maintain integrity and basic fairness—particularly in criminal matters where a loss of freedom is at stake.
III. The Law of the Case Doctrine
The law of the case doctrine “reflects the reluctance of a second judge to rule differently from the first judge on a case, issue, or question of fact or law once decided by final judgment or on appeal.” Vittands v. Sudduth, 49 Mass.App.Ct. 401, 413 n.19 (2000). Its application is limited to situations where the court is asked to reconsider questions decided in earlier stages of the “same case.” See, e.g., Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988); Commonwealth v. Clayton, 63 Mass.App.Ct. 608, 611 (2005). Further, its application is permissive, not mandatory, Sudduth 49 Mass.App.Ct. at 413 n.19, and it is beyond dispute that the second judge to hear the case or issue retains “the power to rule differently from the first judge ... in order to reach a just result.” Goulet v. Whitin Mach. Works, 399 Mass. 547, 554 (1987). The Commonwealth argues that the law of the case doctrine is not applicable here because the instant action is not the “same case” as the District Court action. This Court disagrees.
a.The Case Against the Defendant is the Same Case, Brought by the Same District Attorney, in the Massachusetts Trial Court
This case is not an appeal or subsequent stage of the District Court action, which was dismissed. It is, however, the same case in every rational and practical sense of the term. The cases share the exact same factual circumstances, the cases were initiated at different points using different procedures, i.e., Mr. Spencer’s District Court arraignment after his arrest and his Superior Court indictment. It is beyond dispute that the Commonwealth had the option of prosecuting Mr. Spencer in District Court following his arraignment as well as the prerogative to present evidence to a Superior Court grand jury. The District Court and the Superior Court have concurrent jurisdiction over this particular offense. And though the subject of much a somewhat jovial rivalry, there is no hierarchy between the District Court and the Superior Court. Thus, the Superior Court is not a higher court in Massachusetts than the District Court.
The fact that an indictment begins the matter in Superior Court does not turn it into an entirely different case. It is important that the conduct of the parties (whether in criminal or civil litigation) is not simply wiped clean or swept under the rug by way of indictment. Certainly, if the defendant himself violated a condition of release or any other pretrial orders from a District Court judge, he would be held accountable for his actions by either Court and by the probation department. A Superior Court judge should absolutely have the authority to uphold and enforce the eviden-tiary, procedural, discoveiy, and punitive rulings made by a District Court judge in order to maintain integrity and sanctity of judicial decisions at all levels of the Massachusetts trial court. Consequently, the District Court discovery sanctions are hereby upheld and enforced by this Court.
b.Basic Principles of Fairness Undergirding Our Criminal Justice System Demand that the Rulings of a District Court Judge Prior to Indictment of a Defendant Remain in Force in the Superior Court if so Decided by a Superior Court Judge
Basic principles of fairness demand that the Commonwealth be held to the same standard of conduct in the District Court as in the Superior Court. To hold otherwise would provide the Commonwealth an unfair procedural advantage built into the trial court system. Whether or not the Commonwealth was motivated to “avoid a trial governed by such rulings via a fresh start in Superior Court” as the defense suggests, it is imperative that the considered rulings of a trial court judge be not tossed aside merely at the prerogative of the District Attorney to change forums. Certain actions by a prosecutor, particularly lack of candor with any court, call for certain measures like those taken by the District Court judge in this matter. Those events are not undone by indictment.
c.The Loss of a Procedural Advantage is Certainly Prejudicial to a Criminal Defendant
Here, the District Court sanctioned the Commonwealth because it had not completed discovery production on the first date Mr. Spencer’s District Court trial was scheduled. That procedural or structural advantage earned by the defendant in this matter against him should not be squandered. Rule 14(a) governs pretrial discoveiy procedures in criminal actions and “establishes automatic mandatoiy discoveiy for the defendant and reciprocal discovery for the Commonwealth.” Commonwealth v. Carney, 458 Mass. 418, 425 (2010). The Rule’s scope is limited “to orders that are remedial in nature, aimed at curing any prejudice caused by the violation of a discoveiy obligation, and ensuring a fair trial.” Id. at 428 (vacating punitive discoveiy sanctions). Nothing in the District Court’s ruling violates this principle. And the Superior Court adopting those rulings similarly does not violate this principle. It is, in fact, within the discretion of this Court to follow and enforce the law of the case.
ORDER
It is hereby ORDERED that the defendant’s Motion to Adopt Rulings of the District Court is ALLOWED.

 General Laws c. 90, §24(1)(a)(1) provides, in relevant part, as follows: “Whoever, upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees *581 or licensees, operates a motor vehicle . . . while under the influence of intoxicating liquor... shall be punished by a fine of not less than five hundred nor more than five thousand dollars or by imprisonment for not more than two and one-half years, or both such fine and imprisonment.”

 On March 28, 2016, this Court {Frison, J.) issued a Memorandum and Order on the Commonwealth’s Motion for Pretrial Detention describing the circumstances of the arrest in more detail. While patrolling Brookfield, Massachusetts, Trooper Conley observed Mr. Spencer’s gray Chevy Cavalier veer over the road’s solid yellow line. Trooper Conley conducted a Registry of Motor Vehicle inquiry on the vehicle’s license plate and discovered that the vehicle’s inspection sticker was not valid and that Mr. Spencer’s license had expired. He then pulled the vehicle over, approached the driver’s side door, and requested Mr. Spencer’s license and registration. Mr. Spencer had difficully retrieving his registration and produced a driver’s permit with a “Z" restriction denoting his permission to operate was subject to an ignition lock restriction. Trooper Conley also observed Mr. Spencer’s eyes were glassy and bloodshot and that an odor of alcohol emanated from the vehicle. Mr. Spencer stated that he had two drinks, admitted that he was not supposed to be driving, and showed Trooper Conley that he removed the vehicle’s ignition interlock device and placed it in a plastic bag. Trooper Murphy also conducted a series of field sobriety tests, which Mr. Spencer failed.

 Mr. Spencer also argues that this case is factually analogous to Williams. That case is inapposite. There, unlike here, the Commonwealth had an avenue to appeal the trial court’s suppression order: it could have applied for leave to pursue an interlocutory appeal using the procedure set forth in Mass.R.Crim.P. 15(a)(2). See Williams, 431 Mass. at 76. See also Mass.R.Crim.P. 15(a)(2). (“[T]he Commonwealth shall have the right and opportunity to apply to a single justice of the Supreme Judicial Court for leave to appeal an order determining a motion to suppress evidence prior to trial”).

 General Laws c. 211, §3 provides, in relevant part, as follows: ‘The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided: and it may issue all writs and processes to such courts and to corporations and individuals which may be necessary to the furtherance of justice and to the regular execution of the laws.”